UNITED STATES of America, Appellee,

v.

**Nolan Taylor ROBINSON, Appellant.**

**No. 75–1944.**

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1976.

Decided July 30, 1976.

---

Charles W. Wolfram, Law School, Univ. of Minnesota, Minneapolis, Minn., for appellant.

Thorwald H. Anderson, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Robert G. Renner, U. S. Atty., Minneapolis, Minn., on the brief.

Before GIBSON, Chief Judge, HENLEY, Circuit Judge, and MEREDITH, Chief District Judge.[*]

HENLEY, Circuit Judge.

Appellant, Nolan Taylor Robinson, defendant below, was convicted by a jury in the District of Minnesota for conspiracy to rob a bank in violation of 18 U.S.C. § 371 and for possession of an unregistered shotgun in violation of 26 U.S.C. § 5861(d) and § 5871. He was sentenced to five years on both counts. On this appeal his principal assignment of error concerns his defense of entrapment. Also assigned as error are the trial court's permitting the jury to consider the purchase of a pair of men's stockings as an overt act in furtherance of the conspiracy, the cross-examination of the defendant as to his prior possession of firearms, and a prosecution statement in closing argument concerning a shoplifting incident in which defendant was involved.[1] We affirm.

The series of transactions giving rise to defendant's convictions took place in Minneapolis and St. Paul, Minnesota, in May and June, 1975. A special agent of the Federal Bureau of Investigation, Frank Pickens, who was on assignment to discover black pimps and prostitutes violating "white slave" statutes, assumed the undercover

---

[*] The Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri, sitting by designation.

1. At oral argument counsel abandoned another assignment of error concerning a garbled instruction to the jury, which counsel has conceded to be a reporting error in the transcript.

role of a pimp from the east who was working to obtain prostitutes to take back east. He assumed the name of Frank Porter.

In his undercover role Pickens first met defendant and one of defendant's "girls," Camille Gomez, on May 6 in the Picadilly Bar in St. Paul, a spot which Pickens understood to be frequented by pimps and prostitutes. The meeting was casual, and Pickens saw girls hand over money to the defendant and told the defendant that he himself was a pimp. A second chance meeting occurred on May 9 at Othello's Bar in Minneapolis.

At a third chance meeting, again at Othello's Bar, on May 19, defendant invited Pickens to join him at his table and bought Pickens a drink. The conversation first concerned the pimping business, but later the defendant brought up the subject of robbing a bank, and in the presence of Gomez indicated that his prostitutes would pull the job and that he would drive the getaway car. He asked Pickens for assistance in the robbery, and Pickens agreed to help. The two planned a meeting the next day at defendant's room at the Hyatt House.

The next day Pickens telephoned defendant's room and talked with Gomez, who informed him that defendant was out. The following day, May 21, Pickens went to the Hyatt House to defendant's room, where he met with defendant and Gomez. They discussed the proposed robbery, and defendant indicated that he either had in his possession or could obtain a sawed-off shotgun for the crime.

The next time Pickens saw defendant was on May 30, when defendant was on a street in downtown Minneapolis. When Pickens asked defendant whether he intended to carry out the plans they had discussed at their last meeting, defendant said that he did not have time to talk. According to Pickens' testimony at trial, defendant and his prostitutes had just shoplifted some merchandise and were on the run. The two agreed to meet at 4:00 the following afternoon at the Picadilly.

Defendant did not show for that meeting. The next meeting took place on June 5 when the two happened to see each other at Othello's. The defendant stated that a storm on the day of the last planned meeting had prevented him from keeping the appointment. (He later claimed that he had merely forgotten.) The two agreed that the next day they would case the bank defendant had selected for the robbery, the Capital City State Bank in St. Paul. Pickens testified that defendant was the one to suggest the casing.

On June 6 Pickens and defendant met at a bar as agreed, and Pickens switched on a small recording device hidden on his person. The two cased the bank, driving to it in Pickens' automobile; Pickens recorded all conversation between them, a transcript of which was introduced in evidence. After the casing Pickens drove defendant back to the bar where they had met. They agreed to meet again on Wednesday night and to rob the bank on Friday.

Pickens testified that because of orders from the FBI that he was to gather all persons who planned to participate in the robbery along with the weapons to be used, he telephoned defendant on the morning of June 11 and planned a meeting at Pickens' apartment for 2:00 in the afternoon. Defendant and others arrived for the meeting and were arrested. A paper sack containing a sawed-off shotgun and a pair of men's stockings, which Gomez had purchased the previous day, was seized.

Defendant's first assignment of error is that the court should have ruled that he was entrapped as a matter of law. In the alternative, defendant submits that the court should have ruled as a matter of law that his right to due process was violated by the conduct of Pickens, or, if the issue presents a jury question, should have delivered a jury instruction on this defense, which he says was recognized in *United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973).

The defendant does not urge that we look solely to the conduct of the government in

determining whether he was entrapped as a matter of law. He submits that we must also look to the evidence to see whether he was predisposed to commit the crime. This "predisposition test," enunciated in *United States v. Russell, supra; Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); and *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), was recently reaffirmed by the United States Supreme Court in *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976).[2]

■ Defendant argues that there was insufficient evidence from which a jury could find beyond a reasonable doubt that he was predisposed to commit the crime of conspiracy to rob a bank. We disagree. Evidence of defendant's predisposition includes the undisputed testimony of both defendant and Pickens that defendant himself brought up the subject of robbing a bank. The contention that this does not show defendant's predisposition for *conspiracy* to rob a bank is without merit, because when defendant indicated his desire to rob a bank he also indicated his intention that his "girls" participate with him in this enterprise and that he drive the getaway car. This is clear evidence of a predisposition to enter into a conspiracy along with his "girls," and he was convicted for doing just that.

Other evidence of defendant's predisposition includes his statement to Pickens during the casing expedition that he had cased the bank before with robbery in mind. Furthermore, he voiced a desire to fetch his gun and his girls and rob the bank on the day of the casing.

■ Defendant points out that there may be a due process issue in cases involving "outrageous" government conduct, *United States v. Russell, supra,* 411 U.S. at 431–32, 93 S.Ct. 1637, and that this defense has been recognized by lower courts. *United States v. Weber,* 518 F.2d 987 (8th Cir. 1975); *United States v. Quintana,* 508 F.2d 867 (7th Cir. 1975). However, in *Russell, Weber* and *Quintana,* this defense was rejected as inapplicable to the defendants in question, and defendant herein has cited no cases in which this defense has been the basis for overturning a conviction.[3] Predisposition of the defendant remains the principal test, and the governmental involvement in the criminal activity in the instant case was not more outrageous or of a higher level than that in *Russell, Weber* and *Quintana. See also United States v. Reifsteck,* 535 F.2d 1030 (8th Cir. 1976); *Willis v. United States,* 530 F.2d 308 (8th Cir. 1976); *United States v. Burnett* (8th Cir. No. 75–1460, Feb. 18, 1976); *United States v. Waskow,* 519 F.2d 1345 (8th Cir. 1975).

In light of the aforementioned holdings, we are unwilling to hold that the court erred in failing to rule as a matter of law that the degree of governmental involve-

---

**2.** There has long been a strong minority view that in determining whether there has been entrapment, the court should look to the conduct of the government agents involved. *See Sorrells v. United States, supra,* 287 U.S. at 453, 53 S.Ct. 210 (separate opinion of Justice Roberts in which Justices Brandeis and Stone concur); *Sherman v. United States, supra,* 356 U.S. at 378, 78 S.Ct. 819 (concurring opinion by Justice Frankfurter, in which Justices Douglas, Harlan and Brennan join); *United States v. Russell, supra,* 411 U.S. at 436, 93 S.Ct. 1637 (dissenting opinion by Justice Douglas with Justice Brennan concurring) and at 439, 93 S.Ct. 1637 (dissenting opinion by Justice Stewart, joined by Justices Brennan and Marshall); *Hampton v. United States, supra* (dissenting opinion by Justice Brennan with Justices Stewart and Marshall concurring).

**3.** Consideration of outrageous government conduct for an entrapment defense was ruled out by the plurality opinion in *Hampton v. United States, supra.* Referring to the *Russell* holding, the plurality opinion by Justice Rehnquist states: "We ruled out the possibility that the defense of entrapment could ever be based upon governmental misconduct in a case . . . where the predisposition of the defendant to commit the crime was established." In his concurring opinion Justice Powell, joined by Justice Blackmun, stated that he was "unwilling to conclude that an analysis other than one limited to predisposition would never be appropriate under due process principles," and indicated that in his opinion the *Russell* case does not go so far as to rule out completely consideration of governmental misconduct under proper circumstances.

ment amounted to a violation of defendant's right to due process. Likewise, the court did not err in failing to submit this issue to the jury. *See Hampton v. United States, supra; United States v. Reifsteck, supra.*

Another assignment of error is the court's instructing the jury that it could consider as an overt act in furtherance of the conspiracy the purchase by Gomez of a pair of men's stockings on the day before the day of the arrest. As noted above, the stockings were seized at the time of arrest and were in the same paper sack as the shotgun, but no evidence was presented as to why the stockings were purchased or how their purchase could be in furtherance of the conspiracy. Two other overt acts were submitted for jury consideration: the casing of the bank on June 6 and the meeting on June 11 at which the arrests were executed.

Since there was no timely objection to the instruction, we will regard it as reversible error only if it affects substantial rights. Fed.R.Crim.P. 52(b). Since there were two other acts in furtherance of the conspiracy and since defendant admittedly participated in these acts, we are unwilling to hold that it was plain error to instruct the jury that the purchase of the stockings could be considered an overt act.

Also assigned as plain error is the cross-examination of defendant concerning his prior possession of guns. Defendant submits that this testimony was elicited from him in order to show predisposition, while the government claims that its purpose was to test defendant's truthfulness. Regardless of the purpose of this cross-examination, we find no plain error, as the other evidence established defendant's predisposition to use a sawed-off shotgun in the robbery. Furthermore, the transcript of the conversation between defendant and Pickens on the day of the casing, which was in evidence, clearly shows that defendant explained to Pickens that he had no hand gun and that the two or three that had formerly been in his possession had been taken from him by the police. We deem the contested cross-examination testimony to be cumulative of this conversation already in evidence.

The last assignment of error challenges the closing argument by the government that the shoplifting incident involving defendant amounted to robbery. The government contends that this statement was made to show that the defendant had lied when he claimed that he had never committed robbery and not to show, as the defendant contends, that the shoplifting incident shows predisposition to commit bank robbery. This court has recognized that a trial court has broad discretion in controlling closing arguments, and that absent a showing of abuse of discretion this court will not reverse. *See United States v. Pruitt,* 487 F.2d 1241, 1246 (8th Cir. 1973); *Bryant v. United States,* 462 F.2d 433, 436 (8th Cir. 1972). We have examined the record and have determined that there was no abuse of discretion in allowing this argument. If allowing it amounted to error, such was harmless in view of the ample evidence showing defendant's predisposition to conspire to commit bank robbery.

Finding no reversible error, we affirm the conviction.