UNITED STATES of America, Appellee,

v.

Louis K. BOHR, Appellant.

No. 78–1096.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1978.

Decided July 26, 1978.

Rehearing and Rehearing En Banc
Denied Aug. 30, 1978.

Certiorari Denied Nov. 6, 1978.

George E. Mallon, Kansas City, Mo., argued and on brief, for appellant.

Gene C. Napier, Asst. U. S. Atty., Kansas City, Mo. (argued), and Ronald S. Reed, Jr., U. S. Atty., Kansas City, Mo., on brief, for appellee.

Before GIBSON, Chief Judge, HEANEY and ROSS, Circuit Judges.

ROSS, Circuit Judge.

Defendant Louis K. Bohr was convicted on two counts of wire fraud in violation of 18 U.S.C. § 1343.[1] He was sentenced to two consecutive four-year terms.

On appeal Bohr alleges that there were several trial errors and argues that, because of the delicate balance between guilt and innocence here, no error can be deemed harmless. After careful consideration of each allegation of error, we are convinced that the convictions should be affirmed.

Bohr was jointly indicted with Joseph B. King. Their first trial resulted in a mistrial when the jury was unable to reach a verdict. During the second trial King was granted another mistrial and severance.[2] That trial continued as to Bohr and resulted in his convictions.

The government's evidence showed that King posed as a farm chemical salesman and obtained the name of Walter Ball, a Jasper, Missouri farmer and the victim of the fraud, from an automobile dealer in Carthage, Missouri. King approached Ball, told him that his brother-in-law worked with the Mt. Vernon, Missouri sheriff's department, and advised Ball that the sheriff's department had over 900 cans of Treflan fertilizer to sell for approximately $40 per can.[3] Ball indicated that he did not

need that much fertilizer, but that he had an acquaintance in Valparaiso, Nebraska, who might be interested. Both King and Bohr encouraged Ball to contact the Nebraska farmer to arrange the deal. Ball's two telephone calls to Nebraska form the bases for the two counts on which Bohr was convicted.

In making the arrangements with the Nebraska farmer, Ball increased the price of the Treflan to about $60 per can, admittedly attempting to make some personal gain. The Nebraskan wired $35,000 to Ball.

On Thursday, April 21, 1977, Ball and his wife met King at a restaurant in Mt. Vernon, Missouri. The three then drove to the courthouse where Bohr came out to greet them. Bohr displayed a badge and a manifest pertaining to the Treflan. They made some final arrangements concerning the terms of the sale.

The next day, April 22, at approximately 2:45 p. m., Ball met Bohr outside the Mt. Vernon courthouse and gave him $31,740 cash and a cashier's check for $4,500, payable to the Treasurer of Lawrence County. Bohr indicated that he was going after receipts, left with the cash,[4] and never returned.

Bohr testified in his own defense. He stated that he had never met King prior to their joint indictment. He gave an alibi defense that was supported by testimony of other defense witnesses.

The key issue at trial was identification. Prior to the grant of mistrial and severance, several witnesses, including Mr. and Mrs. Ball, identified King. Although the Balls also identified Bohr, their identification of

---

1. 18 U.S.C. § 1343 provides:

 Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

2. Joseph B. King was eventually convicted on both counts of wire fraud. At the time this case was argued his appeal was pending. *See United States v. King*, No. 78–1286.

3. This apparently was a very good price. Leonard Benes, a dealer in farm supplies and the Nebraska farmer discussed *infra*, testified that his cost for a can of Treflan fertilizer, at that time of year, would be $90 to $100.

4. The cashier's check was left in the victim's automobile and was introduced as evidence at the trial.

him was seriously questioned during cross-examination. They had given a description of the man who took their money and a composite drawing had been made. They described the man as approximately 3 inches shorter than King, weighing about 230 pounds, and having blond, wavy hair.

At trial Bohr demonstrated that he was actually about the same height as King. He then weighed about 210 pounds and had straight brown hair. Defense witnesses testified that Bohr's weight had been the same, and he had not changed his hair color or style, for at least 6 years. On cross-examination they stated they did not see Bohr on April 21 or 22.

One government witness, the waitress at the restaurant in Mt. Vernon, failed to identify Bohr at the first trial. She did identify him at the second trial, although she was not "exactly positive." She stated, on cross-examination at the second trial, that she was able to identify Bohr now because she had done "a lot of thinking" between trials.

A third government witness, Harold E. Roberts, Jr., positively identified Bohr as the man who had defrauded him out of $20,000 in a similar scheme in Arkansas on February 11, 1977. Roberts did not identify King.

*Other Crimes Evidence.*

Bohr's first allegation of error on appeal challenges the admission of three pieces of evidence which allegedly indicated his involvement in other crimes and thus denied him his rights to due process of law and a fair trial.

The challenged evidence included the testimony of Harold Roberts who identified Bohr as the individual who defrauded him

out of $20,000 in a similar scheme in Arkansas two and one-half months prior to the incident in question. Bohr contends that because of the likelihood that the jury would draw an improper inference from Roberts' testimony, it should have been excluded to avoid confusion of the issues and misleading of the jury.

Generally, evidence of prior criminal acts of an accused, not charged in the indictment, is not admissible. *Boyd v. United States*, 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed. 1077 (1892). There are exceptions to this rule of exclusion and admissibility is governed by Rule 404(b) of the Federal Rules of Evidence.[5]

Under this rule evidence of other criminal activity is relevant to prove identity, an issue which was strongly contested in this case. It was incumbent on the government to prove that Bohr was the individual who took the Balls' money. He denied any knowledge of the incident, presented an alibi defense, and vigorously cross-examined the government's identification witnesses.

Roberts testified to a scheme very similar to the one charged and he positively identified Bohr. Furthermore, the Arkansas incident was reasonably close in time to the crime charged at trial. *See United States v. Davis*, 551 F.2d 233, 234 (8th Cir.), *cert. denied*, 431 U.S. 923, 97 S.Ct. 2197, 53 L.Ed.2d 237 (1977); *United States v. Clemons*, 503 F.2d 486, 489 (8th Cir. 1974). Thus, we find that the requirements of Rule 404(b) were met.

Our task does not end here. Rule 403 of the Federal Rules of Evidence[6] allows the district court to exclude such evidence, even though relevant, "if its probative value is

---

**5.** Rule 404(b) of the Federal Rules of Evidence provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**6.** Rule 403 of the Federal Rules of Evidence provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

substantially outweighed by the danger of unfair prejudice, * * *." Bohr contends that the district court erred in not excluding Roberts' testimony, pursuant to Rule 403.

We may not reverse the ruling of the district court unless we find the testimony so prejudicial that its probative value is outweighed by unfair prejudice. *United States v. Maestas*, 554 F.2d 834, 836 (8th Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1070 (1977). In making our evaluation we must give great deference to the district judge who saw and heard the evidence. *Id., citing United States v. Nichols*, 534 F.2d 202 (9th Cir. 1976); *United States v. Gocke*, 507 F.2d 820, 824 (8th Cir. 1974), *cert. denied*, 420 U.S. 979, 95 S.Ct. 1407, 43 L.Ed.2d 660 (1975); *United States v. Skillman*, 442 F.2d 542, 551–52 (8th Cir.), *cert. denied*, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971).

We find that the probative value of Roberts' testimony was substantial and was not outweighed by unfair prejudicial impact. The other evidence of identity was not so strong that resort to evidence of the Arkansas incident was unnecessary and unfairly prejudicial. *Cf. United States v. Weaver*, 565 F.2d 129, 134 (8th Cir. 1977); *United States v. Moody*, 530 F.2d 809, 810 (8th Cir. 1976).

During the course of the trial the government introduced, and passed to the jury, a photograph of Bohr which appeared to be a police "mug shot." Although Bohr never objected to the introduction of this evidence he asks this court to consider it under the plain error provisions of Rule 52(b) of the Federal Rules of Criminal Procedure. He contends that the obvious implication is that if such a photograph existed prior to his arrest on the current charge, he must have had a prior criminal record.

This court does not endorse the introduction into evidence of obvious "mug shots."

*See United States v. DeVerse*, 464 F.2d 80, 84 (8th Cir.), *cert. denied*, 409 U.S. 988, 93 S.Ct. 342, 34 L.Ed.2d 253 (1972). However, we have not adopted a per se rule prohibiting the use of such evidence and we must view each case on its facts.

We note that the defendant did not object to the introduction of the photograph and, in fact, *when specifically asked by the district court if there were any objections, Bohr's attorney indicated that he had none.* Our task on review under the plain error rule is limited.[7] *See United States v. Scott*, 485 F.2d 576, 577 (8th Cir. 1973), *cert. denied*, 416 U.S. 941, 94 S.Ct. 1946, 40 L.Ed.2d 292 (1974).

Two factors weigh heavily in our determination that the admission of the photograph of Bohr did not constitute plain error. Initially we note that the government's first use of the photograph came during redirect examination of Walter Ball. His identification of Bohr was essential to the government's case. Although Ball had made an in-court identification of Bohr, he had been extensively cross-examined. Certainly his testimony indicated some differences in Bohr's appearance between April 21 and the date of trial. The photograph was needed to show that Ball had identified Bohr from a photograph depicting him much the same as he appeared in court. *Cf. United States v. Johnson*, 495 F.2d 378, 384 (4th Cir.), *cert. denied*, 419 U.S. 860, 95 S.Ct. 111, 42 L.Ed.2d 95 (1974); *United States v. Sherman*, 421 F.2d 198, 200 (4th Cir.), *cert. denied*, 398 U.S. 914, 90 S.Ct. 1717, 26 L.Ed.2d 78 (1970).

Furthermore, in instructing the jury the district court made the following reference to the photograph:

Now, there is proper concern about the witnesses reference to photographs of defendant Bohr. The police may have many pictures of people. Simply because the police have a person's picture does not

7. Bohr urges us to adopt the First Circuit's consideration of three prerequisites in determining whether admissions of photographs amount to an abuse of discretion. *See United States v. Fosher*, 568 F.2d 207, 214 (1st Cir.

1978). Because the issue is presented to us for review under the plain error provisions of Rule 52(b) of the Federal Rules of Criminal Procedure, we decline to do so here.

mean that that person has ever committed a crime before or since. So please understand that there is no connotation of guilt of any kind simply because some pictures of the defendant Bohr were in the possession of the police.

Under these circumstances we find no reason to invoke the plain error rule.

The third piece of evidence that Bohr contends improperly suggested his involvement in other criminal activity came on the government's cross-examination of his wife. The prosecutor asked her: "Mrs. Bohr, isn't it a fact that you provided on another occasion an alibi for your husband at an earlier time?" The district court sustained Bohr's objection to the question but allowed the government to rephrase the question to indicate that the alibi had been provided in a civil case. Mrs. Bohr indicated she had previously provided an alibi.

The government contends that reference to the prior "alibi" was proper cross-examination since it affected Mrs. Bohr's credibility.

■ We think that it was improper for the prosecutor to ask the question about the "alibi" in a prior civil matter. The term "alibi" suggests a defense to a criminal prosecution and is not commonly used in civil proceedings. Furthermore, the fact that Mrs. Bohr had previously given a sworn statement that her husband was in a place other than where he was alleged to have been, does not necessarily affect her credibility. By arguing that it does the government reinforces the defendant's contention that the word "alibi" has negative connotations.

However, we do not think that this question requires reversal. The prosecutor did

not pursue the matter, and the defendant, on redirect examination of Mrs. Bohr, made it very clear that the prior matter referred to was civil in nature.

*Severance.*

Next Bohr contends that the district court erred in denying his motions for severance from defendant King and in continuing the trial as to him after granting a mistrial as to King. He argues that he was prejudiced due to the disparity in quantity and quality of evidence against each defendant, and the differences in their defenses.

Bohr recognizes the propriety of joinder of defendants under Rule 8(b) of the Federal Rules of Criminal Procedure,[8] but contends that, under the facts and circumstances of this case, the joinder of defendants reached the level of prejudice required for relief from prejudicial joinder under Rule 14 of the Federal Rules of Criminal Procedure.[9] He argues that the evidence against King was far more damaging than the evidence against him. Not only was King identified by witnesses, his car was placed at the scene. Furthermore, King did not testify.

The government contends that the presence of King as a codefendant did not alter its presentation of evidence against Bohr, nor did it preclude Bohr from presenting his alibi defense.

■■ A motion to sever is addressed to the sound discretion of the trial court. *United States v. Smith,* 578 F.2d 1227 (8th Cir. 1978), and cases cited therein. The task of this court is to determine whether denial of the motions resulted in clear prej-

---

8. Rule 8(b) of the Federal Rules of Criminal Procedure provides:

 Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

9. Rule 14 of the Federal Rules of Criminal Procedure provides, in pertinent part:

 If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever relief justice requires.

udice. *United States v. Martinez,* 573 F.2d 529, 533 (8th Cir. 1978); *United States v. Schroeder,* 433 F.2d 846, 851 (8th Cir. 1970), *cert. denied,* 401 U.S. 943, 91 S.Ct. 951, 28 L.Ed.2d 224 (1971).

 Although Bohr has submitted juror affidavits stating that he was prejudiced by his joint trial with King, we cannot accept that as conclusive of the issue.[10] A showing of prejudice requires more than a showing of a better chance of acquittal at a separate trial. *United States v. Smith, supra; United States v. Anthony,* 565 F.2d 533, 538 (8th Cir. 1977); *United States v. Wofford,* 562 F.2d 582, 586 (8th Cir. 1977). The government's evidence against Bohr, if believed, was sufficient to support a conviction. *Cf. United States v. King,* 567 F.2d 785, 788 (8th Cir. 1977). Finding no prejudice to Bohr we hold that failure to grant his motions for severance was not an abuse of discretion.

*Prosecutorial Misconduct.*

Janie Wilks, the waitress at the Mt. Vernon restaurant, testified as a government witness. At the first trial she was unable to identify Bohr. At the second trial she stated that Bohr was in the restaurant with King on April 21. Wilks was vigorously cross-examined and Bohr contends that she was completely discredited.

In his closing argument defense counsel challenged Wilks' testimony saying: "Can an identification like that be trusted? And she had seen photospreads, too; do not forget that."

In response to that argument the prosecutor stated:

> He is saying to disregard Mrs. Wilks testimony because in a prior proceeding she wasn't able to specifically identify. But I don't believe he told you, but maybe he did, when Mrs. Wilks was contacted by Agent Hickam of the F.B.I. back in July, she selected Mr. Bohr's picture along with somebody else * * *.

In fact the only testimony by Wilks relating to a photospread was that she knew she would have to remember the defendants "[b]ecause three or four days later [police investigators] come and asked me to point a picture out."

Although the defendant immediately objected to the remarks of the prosecutor, the jury was not admonished to disregard the comment nor was it reminded that it was the sole judge of the facts. .

The prosecutor obviously misstated the evidence. However, he had earlier advised the jury:

> I will discuss the testimony of numerous witnesses and I won't intentionally misstate that testimony, but in case I do, make a misstatement or your recollection of their testimony varies with what I say their testimony was, it is your recollection that counts, not mine.

 Although we feel that it would have been better if the government had not made the questioned remark, we note that the trial court has broad discretion in controlling closing arguments. *See United States v. Robinson,* 539 F.2d 1181, 1185 (8th Cir. 1976), *cert. denied,* 429 U.S. 1101, 97 S.Ct. 1124, 51 L.Ed.2d 550 (1977). Absent a showing of abuse of discretion this court will not reverse. *Id.* "The dominating question, always, is whether the argument complained of was so offensive as to deprive the defendant of a fair trial." *Isaacs v. United States,* 301 F.2d 706, 736 (8th Cir.), *cert. denied,* 371 U.S. 818, 83 S.Ct. 32, 9 L.Ed.2d 58 (1962). We must view the prosecutor's remarks in the context of the entire trial. *United States v. Dawkins,* 562 F.2d 567, 568 (8th Cir. 1977), *citing United States v. Chrisco,* 493 F.2d 232, 238 (8th Cir.), *cert. denied,* 419 U.S. 847, 95 S.Ct. 84, 42 L.Ed.2d 77 (1974). With this in mind we find that the remarks of the prosecutor do not require reversal.

*Jury Related Errors.*

One juror approached government witness Walter Ball, the victim of the fraud,

---

10. In light of Rule 606(b) of the Federal Rules of Evidence we are doubtful that these juror affidavits are even competent evidence. *Cf.*

*United States v. Crosby,* 294 F.2d 928, 949–50 (2d Cir. 1961).

and talked to him at a recess during trial. The conversation concerned a creosote company near Ball's home and the juror's son who was in business in St. Elizabeth, Missouri. No mention of the case being tried was made.

In a brief hearing on the matter the juror stated he felt no sympathy for Ball that might make him a partial juror and that this conversation would not affect his thinking as a juror. Bohr contends that it was error not to replace this juror with the alternate.

We recognize that "what is prejudicial to a fair trial when the issue of 'juror misconduct' is raised, is a matter that must, to a large extent, be left to the discretion of the trial court and that an appellate court will not reverse the determination of that court on such an issue unless it is established as clearly erroneous." *Little v. United States,* 331 F.2d 287, 295 (8th Cir.), *cert. denied,* 379 U.S. 834, 85 S.Ct. 68, 13 L.Ed.2d 42 (1964), *citing Mattox v. United States,* 146 U.S. 140, 147, 13 S.Ct. 50, 36 L.Ed. 917 (1892). Although we believe it would have been advisable to substitute the alternate juror, we do not find that failure to do so was clearly erroneous. The conversation between the juror and the witness was innocuous and the trial court, after interviewing both the juror and the witness, found no prejudice to Bohr. *See United States v. Bryan,* 534 F.2d 205, 207 (9th Cir. 1976); *Parrott v. Arkansas,* 497 F.2d 1123, 1125–26 (8th Cir. 1974); *United States v. Davis,* 456 F.2d 1192, 1196 (10th Cir. 1972).

Bohr also contends that the district court erroneously denied his motion for new trial on the basis of newly discovered evidence. In support of his motion Bohr submitted a notarized statement signed by the jury foreman indicating that in addition to being employed by General Motors he was a farmer with about $130,000 invested in his farm. This information was not provided to the parties by the clerk prior to trial. Bohr contends that had he known of the foreman's farm investments he would have exercised a preemptory challenge as to him.

Finding that the affidavit did not touch any fact concerning the commission of the crime in question and so did not constitute newly discovered evidence, the district court denied the motion. The district court further found that nothing in the affidavit indicated that the jury verdict was improperly tainted.

We find no error in the denial of the motion for new trial and agree that there was nothing to indicate that the verdict was tainted.[11]

Before a new trial on the ground of newly discovered evidence can be granted five conditions must be met: 1) the evidence must be in fact, newly discovered, i. e., discovered since the trial; 2) facts must be alleged from which the court may infer diligence on the part of the movant; 3) the evidence relied on must not be merely cumulative or impeaching; 4) it must be material to the issues involved; and 5) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal. *United States v. Frye,* 548 F.2d 765, 769 (8th Cir. 1977), *citing United States v. McColgin,* 535 F.2d 471, 476 (8th Cir. 1976); and *Johnson v. United States,* 32 F.2d 127, 130 (8th Cir. 1929). We find Bohr's motion lacking in two of the five conditions.

First, the facts alleged do not permit the court to infer due diligence on the part of the movant. There is no indication that defense counsel requested voir dire questions regarding farming interests of any of the potential jurors. If the possibility that a juror was involved in a large farming operation was crucial to the defendant, he had ample opportunity to have the jury questioned about such interests. *Cf. Fabi-*

---

11. If Bohr's motion can be taken as a suggestion of improper influence on the jury, the affidavit is not competent evidence to support such an allegation. Under Rule 606(b) of the Federal Rules of Evidence a juror may not testify as to "the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict * * * or concerning his mental processes in connection therewith, * * * ."

an v. United States, 358 F.2d 187, 190–91 (8th Cir.), cert. denied, 385 U.S. 821, 87 S.Ct. 46, 17 L.Ed.2d 58 (1966). Furthermore, nothing in the affidavit even remotely suggests that on a new trial this "newly discovered evidence" would produce acquittal.

### Unstipulated Polygraph Test.

█ Bohr took a polygraph test and advised the court that he would call the polygraph examiner as a witness on his behalf. The government did not stipulate to the results of the test and objected to any reference to it. The district court sustained the government's objection.

Bohr contends that by excluding this evidence the district court denied him his right to due process of law. We cannot agree. In United States v. Alexander, 526 F.2d 161, 166 (8th Cir. 1975), this court held that "the results of unstipulated polygraph examinations should not be admissible in evidence at a criminal trial." See also United States v. Smith, 552 F.2d 257, 260 n. 3 (8th Cir. 1977).

### Failure to Show Violation of the Statute.

Bohr contends that the government's evidence on the interstate telephone calls was deficient in two respects. First he argues that the record is devoid of evidence that he transmitted anything in interstate commerce. He also contends that the testimony of the telephone company engineer failed to establish that any transmission of telephone messages was accomplished by wire across state lines. Both arguments lack merit.

█ Bohr was charged with causing the alleged interstate transmissions. Proof of such a charge is sufficient to establish a violation of the statute. See United States v. Brown, 540 F.2d 364, 376 (8th Cir. 1976); United States v. Calvert, 523 F.2d 895, 903 (8th Cir. 1975), cert. denied, 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976); United States v. Conte, 349 F.2d 304, 306 (6th Cir. 1965).

█ Ball testified that calling his Nebraska acquaintance was his idea, but that Bohr knew about the calls and encouraged him to arrange the deal. This evidence is sufficient to prove that Bohr caused the calls to be made.

The telephone company engineer gave the following description of how a call would be transferred from Jasper, Missouri, to Valparaiso, Nebraska:

It would go by way of cable through Carthage, Missouri, to Joplin, Missouri on cable, and then from Joplin to Kansas City it would, it could go one of two ways. It could go by way of microwave, which is a radio relay, or it could go by cable. And from Kansas City, it would go by way of microwave to Lincoln, Nebraska. And from Lincoln to Valparaiso, it would go on cable. And that would be it.

Bohr contends that this testimony fails to establish transmittal of the telephone messages in question by means of wire, radio, or television communication as prohibited by the statute.

Bohr acknowledges that microwave signals are radio signals. He argues, however, that television signals are also radio signals, and since the statute specifically mentions both radio and television signals, but not microwave signals, the use of microwave signals does not fall within the prohibition of the statute. We cannot agree.

█ There is nothing in the statute to indicate that because a portion of the telephone calls in question were transmitted by microwave, a radio relay, they are not encompassed within the purview of the statute. Defendant has cited no authority, and we have found none, to support his contention.

### Hearsay Evidence.

Bohr contends that, by allowing several prosecution witnesses to testify concerning conversations had outside the presence of the defendant, the district court permitted an accumulation of hearsay evidence that became very prejudicial and, when con-

sidered with other points raised on appeal, amounted to error requiring a new trial.[12]

■ Bohr's contention fails in two respects. First, where the declarant is also a witness, the rationale of the hearsay rule does not apply. "The primary justification for the exclusion of hearsay is the lack of any opportunity for the adversary to cross-examine the absent declarant whose out-of-court statement is introduced into evidence." *Anderson v. United States,* 417 U.S. 211, 220, 94 S.Ct. 2253, 2260, 41 L.Ed.2d 20 (1974) (footnote omitted). *See also United States v. Conley,* 523 F.2d 650, 655 (8th Cir. 1975), *cert. denied,* 424 U.S. 920, 96 S.Ct. 1125, 47 L.Ed.2d 327 (1976). Here, in many instances, the declarant was a witness and was subject to cross-examination by Bohr.

■ Furthermore, the conversations complained of were not offered to prove the truth of what was said, and they therefore do not fall within the definition of hearsay. *See Anderson v. United States, supra,* 417 U.S. at 220, 94 S.Ct. 2253; *United States v. Cline,* 570 F.2d 731, 734–35 (8th Cir. 1978); *United States v. Wilson,* 532 F.2d 641, 645 (8th Cir.), *cert. denied,* 429 U.S. 846, 97 S.Ct. 128, 50 L.Ed.2d 117 (1976).

■ Even if the testimony was hearsay, we find it was not prejudicial.

*Sentencing.*

Bohr received a four-year sentence on each count with the two sentences to run consecutively. He contends that the sentence was harsh and excessive, and asks that the matter be remanded to the district court for resentencing. This allegation lacks merit.

■ The wire fraud statute, 18 U.S.C. § 1343, carries a maximum penalty of five years imprisonment and $1,000 fine for each violation. The sentence imposed was within the statutory limit and there is no evidence that the court abused its discretion in the sentencing process. *See United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *United States v. Gotches,* 547 F.2d 80, 82 (8th Cir. 1977); *Woosley v. United States,* 478 F.2d 139, 141 and 147 (8th Cir. 1973).

*Cumulative Effect of Alleged Errors.*

■ Finally, Bohr argues that if any alleged error is insufficient, in and of itself, to mandate reversal, the cumulative effect requires that he be granted a new trial. We find, however, that the cumulative strength of these allegations is no greater than the sum of the parts. "The critical inquiry is an analysis of the 'probable impact, appraised realistically, of the particular [errors] upon the jury's fact finding function.'" *United States v. Jones,* 157 U.S.App.D.C. 158, 160, 482 F.2d 747, 749–50 n. 2 (1973), *quoting United States v. Wharton,* 139 U.S.App.D.C. 293, 299, 433 F.2d 451, 457 (1970). We have thoroughly reviewed the testimony and viewed the exhibits and find that the defendant received a fair trial.

The judgment of conviction is affirmed.

---

12. Rule 802 of the Federal Rules of Evidence prohibits the use of hearsay except as otherwise provided. Rule 801(c) of the Federal Rules of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."