UNITED STATES of America, Appellee,

v.

**Paul BAYKOWSKI, Jr., Appellant.**

No. 79–1601.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 10, 1979.

Decided Feb. 20, 1980.

Rehearing and Rehearing En Banc Denied March 13, 1980.

James J. Knappenberger, Shaw, Howlett & Schwartz, Clayton, Mo., argued, for appellant; C. Clifford Schwartz, Clayton, Mo., on brief.

Evelyn M. Baker, Asst. U. S. Atty., St. Louis, Mo., argued, for appellee; Robert D. Kingsland, U. S. Atty., St. Louis, Mo., on brief.

Before LAY, Chief Judge,* and HEANEY and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

Appellant Paul Baykowski, Jr. was convicted by jury in the United States District Court for the Eastern District of Missouri on two counts of a seven-count indictment which included charges against alleged co-

---

* The Honorable Donald P. Lay became Chief Judge of the Eighth Circuit on January 1, 1980.

conspirators Norman Owens, Linda Fay Owens, Raymond Bryan and William Politte as well as against Baykowski. The counts specifically charging Baykowski were Count II (conspiracy to knowingly transport stolen property in violation of 18 U.S.C. § 371); Count V (knowingly storing stolen property in violation of 18 U.S.C. § 2315); and Count VI (knowingly transporting stolen property in violation of 18 U.S.C. § 2314). The jury returned a verdict of guilty on Count II and Count V and not guilty on Count VI, and the court sentenced Baykowski to a total of twelve years imprisonment and fined him $10,000.00.[1]

On appeal Baykowski argues that the trial court erred in (1) admitting a statement of a coconspirator in violation of standards set forth in *United States v. Bell*, 573 F.2d 1040 (8th Cir. 1978); (2) admitting evidence of prior crimes; and (3) denying his motions for judgment of acquittal. We affirm.

## I

This case arises out of an alleged conspiracy to steal, transport and then sell over one million dollars worth of personal property. According to the government, from February, 1977 through December, 1977 a series of robberies took place in Jackson, Mississippi and surrounding areas. Because of the striking similarity of these robberies in terms of the time and mode of entry, property taken as well as ignored, and the condition of the dwellings following the break-ins, it is the theory of the government that these robberies were committed by the same person or group of persons. The government further theorizes that the goods acquired in the Mississippi robberies were subsequently transported and sold in and around St. Louis and that defendant Baykowski was connected with the conspiracy and knowingly transported and stored the stolen property. There was, however, no direct evidence proving Baykowski's par-

ticipation in this scheme and thus the government at trial focused to a large degree on establishing through circumstantial evidence that Baykowski did in fact commit the criminal acts in question.

The government first attempted to tie Baykowski to the conspiracy through the testimony of two desk clerks who worked at the Ramada Inn in Jackson, Mississippi. Both desk clerks testified that they recalled having seen the defendant Baykowski during the latter part of 1977 at the Jackson, Mississippi Ramada Inn. But other than their recollection that Baykowski was in Mississippi in the fall of 1977, neither clerk could offer other information which might connect Baykowski to the Jackson, Mississippi robberies.

The government additionally tried to show Baykowski's involvement in the conspiracy and knowing participation in the scheme through the revelation that property taken from Mississippi was found in Baykowski's van following his arrest.[2]

Baykowski was arrested after the FBI set up a surveillance on December 14, 1977 at the Wood Hollow Apartments, a location where an FBI undercover agent, Donald H. Taylor, had previously purchased some stolen property traced to Mississippi ownership. Shortly after the surveillance began, the agents spotted one of the alleged coconspirators, Norman Owens, pulling into the apartment complex with a small U-Haul trailer attached to his car. In addition, a dark blue Ford Econoline van (the Baykowski van) also pulled into the complex. The two vehicles were parked next to each other and had been backed in towards an apartment. Eventually three men began unloading property from the U-Haul trailer. The FBI agents tried to arrest them but the three men ran into a nearby apartment, locked the door and closed the curtains. Some time later they escaped from the

1. More specifically, Baykowski was sentenced to a four year prison term on Count II and an eight year prison term on Count V to run consecutively. Baykowski was also fined $5,000.00 on each count for a total of $10,-000.00.

2. The van apparently was owned by Baykowski's wife, Barbara Baykowski. Defendant Baykowski, however, was driving the van on the day of his arrest.

apartment complex undetected by the agents.

But after approximately twenty minutes an FBI agent saw two men at Denny's Restaurant who resembled the two men who were helping Owens unload the U–Haul trailer at the apartment complex. The two men were Paul Baykowski and William Politte.

After arresting the men, the FBI agent searched the arrestees and discovered that Baykowski had on his person a set of keys. Later that night another FBI agent took the keys back to the Wood Hollow Apartments and found that one of the keys fit the van parked next to the U–Haul trailer. The agent inventoried the items in the van pursuant to a search warrant and discovered two large carpets and some chandeliers. The two large carpets in the van were stolen in Jackson, Mississippi on December 12, 1977. The agents also inventoried the goods in the Owens car and attached U–Haul as well as in the apartment, and many of these items were also traced to owners in Mississippi.

The government finally tried to establish Baykowski's participation in the scheme through an out-of-court statement by co-conspirator Linda Fay Owens. This statement was directed to an undercover agent, Donald H. Taylor, after he had made numerous contacts with coconspirators Norman Owens and Raymond Bryan. Through these meetings, Taylor began to learn of the nature and scope of the conspiracy, as well as the identity of the coconspirators.

As early as September 19, 1977 Taylor was apprised of the fact that Raymond Bryan worked with one Norman Owens and that Owens in turn worked with a group of partners. Later, Taylor partially verified the names of these other participants in a meeting on December 20, 1977 with coconspirator Linda Fay Owens. At this meeting Taylor apparently wanted to buy some additional stolen merchandise from Norman Owens. Mrs. Owens, however, informed Taylor that her husband was not at home because his partners had been arrested. She also told Taylor that her husband's

partners were Paul and Bill. This was the first time Paul Baykowski's name, or, for that matter, Bill Politte's name, had been mentioned to FBI Agent Taylor by a coconspirator.

Following the close of the government's case, Baykowski attempted to refute his seeming involvement in the scheme. Baykowski first tried to discredit the testimony of the two desk clerks from the Ramada Inn in Jackson, Mississippi who testified that they had seen Baykowski in Mississippi during the fall of 1977. Baykowski presented a number of witnesses including his wife, employer, and friend who testified that the defendant had remained in Granite City, Illinois (near St. Louis) for various periods of time in the latter part of 1977. Furthermore, Baykowski himself testified that he had never been to Mississippi.

Baykowski additionally tried to show that he was unaware of the conspiracy or of his participation in criminal activities. Baykowski testified that Bill Politte had called him on December 14 asking him to help move some items and that he agreed to help out. Baykowski stated, however, that at the time he moved the items from the U–Haul trailer to the van he did not know the goods were stolen. Although Baykowski conceded that he ran when the FBI agents appeared at the apartment complex, he asserted that the reason he ran along with the other coconspirators was because he had previously served time in prison.

Despite Baykowski's testimony, the jury found him guilty of conspiracy to knowingly transport and store stolen property and knowingly storing stolen property.

## II

On appeal Baykowski first claims that the district court erred by failing to follow *United States v. Bell, supra,* in determining the admissibility of an out-of-court declaration by an alleged coconspirator. Appellant notes that under *Bell* "an out-of-court statement is not hearsay and is admissible if on the independent evidence the district court is satisfied that it is more likely than

not that the statement was made during the course and in furtherance of an illegal association to which the declarant and the defendant were parties." *Id.* at 1044. In addition, appellant points out that *Bell* describes certain procedural steps which should be utilized in determining the admissibility of a coconspirator's statement. Baykowski contends that the district court incorrectly applied both the procedural guidelines and substantive test enunciated in *Bell.* We do not agree.

We turn first to appellant's "substantive" argument that the government did not adduce sufficient independent evidence that defendant was a member of a conspiracy to allow the admission of the out-of-court statement by Linda Fay Owens that her husband's partners were Paul and Bill. Appellant asserts that the only independent evidence that the government offered showing Baykowski's involvement in the conspiracy were the identification of the two hotel clerks from the Ramada Inn in Jackson, Mississippi and the testimony of FBI agents as to Baykowski's activities on the date of his arrest. Noting that the statement of Linda Fay Owens cannot be considered in determining the admissibility of a coconspirator's out-of-court statement,[3] appellant complains that the independent evidence was insufficient to show by a preponderance his participation in the conspiracy.

We are unpersuaded by appellant's argument and believe that substantial independent evidence was introduced by the government proving by a preponderance of the evidence defendant's participation in the conspiracy. *United States v. Milham*, 590 F.2d 717, 723 (8th Cir. 1979). Most convincing is the fact that defendant Baykowski was arrested on December 14 while assisting conspirator William Politte and at the time of his arrest had on his person a key which fit the van from which several stolen items from Mississippi were recovered. Furthermore, employees at the Ramada Inn in Jackson, Mississippi testified that they had seen Baykowski at the Inn during the fall of 1977. We thus conclude that the district court properly determined that the government had proven by a preponderance of independent evidence that defendant participated in the conspiracy and that the statement was made in the course and in furtherance of the conspiracy.

We are also unconvinced by appellant's argument that the district court committed reversible error in applying *Bell's* procedural guidelines. Appellant argues that the district court failed to follow the *Bell* guidelines in two ways. First, appellant contends that under *Bell* the trial judge is to determine at the conclusion of all the evidence whether the government proved by a preponderance of the evidence that the statement was made by a coconspirator during the course and in furtherance of a conspiracy. Because the trial judge in the present case made this determination at the close of the government's case in chief, appellant argues that the district court's procedure did not comport with *Bell* and requires reversal. Appellant further claims that the trial judge erred in not providing an appropriate instruction as required by *Bell* cautioning the jury with regard to the weight and credibility to be accorded a coconspirator's statement.

The procedural guidelines enunciated in *Bell* are "flexible and not infallible." *United States v. Littlefield*, 594 F.2d 682, 686 (8th Cir. 1979). If, as in this case, the trial court did in fact comply with the substance of the procedural guidelines, we believe that a slight deviation which does not affect the substantial rights of the parties should not constitute grounds for reversal. Fed.R.Civ.P. 61. With these standards in

---

**3.** Although the First Circuit has recently suggested in dictum that a trial judge may consider the out-of-court statement itself in determining its admissibility under Federal Rule of Evidence 104(b), *United States v. Martorano*, 557 F.2d 1, 11–12 (1st Cir. 1977), *cert. denied*, 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1978), this court has adhered to the requirement that the trial court only consider independent evidence of the conspiracy. *See, e. g., United States v. Macklin*, 573 F.2d 1046 (8th Cir.), *cert. denied*, 439 U.S. 852, 99 S.Ct. 160, 58 L.Ed.2d 157 (1978).

mind, we turn to examine appellant's contention of error under the *Bell* procedural guidelines.

■ As to appellant's contention that the trial court erred in determining the admissibility of the coconspirator's statement at the close of the government's case in chief instead of at the close of all evidence, we observe that the trial court did substantially comply with the *Bell* procedure. In accordance with *Bell*, the district court conditionally admitted the declaration of the alleged coconspirator after timely and appropriate objection by the defense and cautioned the parties after excusing the jurors that the government was required to prove by a preponderance of independent evidence that the statement was made by the coconspirator during the course and in furtherance of the conspiracy. Although the court did not precisely follow *Bell* in determining at the end of the government's case if the coconspirator's statement should be admitted, we believe that this error did not affect the substantial rights of the parties. We note that defendant could have objected to the court's determination of admissibility of the coconspirator's statement at the close of all the evidence, and the court undoubtedly would have reconsidered the question of admissibility. The defendant, however, chose not to exercise this option.

■ We also are not convinced that the district court's failure to follow the *Bell* procedural guidelines of providing an instruction cautioning the jurors about the weight and credibility to be accorded a coconspirator's statement after admitting the out-of-court declaration under Fed.R.Evi. 801(d)(2)(E) constituted reversible error.

Although we do not approve of the trial court's failure to follow this procedural guideline established in *Bell*, we note that the defendant did not object to the jury instruction at trial. When an appellant raises an objection as to jury instructions for the first time on appeal, this court has held in accord with Fed.R.Crim.P. 30 that the "objection comes too late to preserve the alleged error on appeal," *Kropp v. Ziebarth*, 601 F.2d 1348, 1355 (8th Cir. 1979), unless the error affected the substantial rights of the parties and thus constitutes plain error. Fed.R.Crim.P. 52(b); *United States v. Robinson*, 539 F.2d 1181 (8th Cir. 1976), *cert. denied*, 429 U.S. 1101, 97 S.Ct. 1124, 51 L.Ed.2d 550 (1977). Since the trial judge did provide a general cautionary instruction,[4] we are unwilling to hold that the district court's failure to follow the *Bell* procedural guideline amounted to plain error necessitating a reversal.

### III

Appellant's next argument is that the trial court erred in admitting certain testimony of detective James McMillan of the Jackson, Mississippi Police Department regarding the pattern of break-ins in Jackson, Mississippi and surrounding areas because this evidence of prior crimes or acts was used to show appellant's character and that he acted in conformity with his character.

■ The argument has no merit. Although Federal Rule of Evidence 404(b) provides that evidence of prior crimes or acts is not admissible to prove the bad character of the defendant, such evidence may be admitted for other purposes such as proof of notice, identity, a common scheme, *United States v. Goehring*, 585 F.2d 371 (8th Cir. 1979), or proof of an element of the crime. *United States v. Etley*, 574 F.2d

---

4. The trial judge stated:

You are the sole judge of the credibility of the witnesses and of the weight and value to be given to their testimony, as well as to all of the evidence and facts and circumstances which have been presented in this trial. In weighing, analyzing and reconciling the testimony, you should consider the demeanor and manner of the witness, his candor and attitude on the witness stand, his interest or lack of interest in the case and its outcome, the relationship he may bear to any of the parties to the case, the means of knowledge or lack of knowledge of the facts about which such witness testifies and his opportunity to know such facts, the reasonableness of the witness's testimony and its probability or improbability, and the extent to which such witness has been corroborated or contradicted, if at all, by other credible evidence.

850 (5th Cir.), *cert. denied,* 439 U.S. 967, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978).[5]

In the present case, the evidence was clearly used to show a common scheme—that the items stolen in Mississippi were transported through interstate commerce to Missouri and Illinois—as well as to prove elements of various counts of the indictment. Thus, the evidence was clearly admissible under the Federal Rules of Evidence.

### IV

Appellant finally argues that the government did not prove beyond a reasonable doubt that he was a knowing and willing member of a conspiracy.

Again, we are unpersuaded. In reviewing a jury's findings of guilt in a criminal case, we are required to consider the evidence in the light most favorable to the government and accept as established all reasonable inferences to support the conviction. *United States v. Rich,* 518 F.2d 980 (8th Cir. 1975), *cert. denied,* 427 U.S. 907, 96 S.Ct. 3193, 49 L.Ed.2d 1200 (1976). So considered, we believe that the government carried its burden.

We have noted that two desk clerks at the Ramada Inn in Jackson, Mississippi testified that the defendant had been in Jackson, Mississippi at the time of a number of break-ins and that appellant was arrested while helping other conspirators unload stolen property from the Baykowski van. Taking this evidence along with the other evidence proffered by the government, in the light most favorable to the appellee, we are convinced that the jury was fully warranted in finding beyond a reasonable doubt that the defendant was a knowing and willing member of the conspiracy to transport and to store stolen property and that he was guilty as charged.

Affirmed.

---

5. Rule 404(b) provides:

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.