UNITED STATES of America, Appellee,

v.

Ronald Clarence FISCHEL, Appellant.

No. 82–1227.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 17, 1982.

Decided Dec. 1, 1982.

Rehearing Denied Jan. 20, 1983.

John R. Wylde, Minneapolis, Minn., court-appointed, for appellant.

James M. Rosenbaum, U.S. Atty., James A. Morrow, Asst. U.S. Atty., D. Minn., Minneapolis, Minn., James L. Forman, Legal Intern, for appellee.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BRIGHT, Circuit Judge.

LAY, Chief Judge.

Ronald Clarence Fischel was found guilty of possession of methamphetamine with the intent to distribute and conspiracy in violation of 21 U.S.C. §§ 841 and 846 (1981), and sentenced to eighteen months imprisonment. On appeal he alleges prejudicial error based on the following grounds: (1) the admission of a statement by a codefendant; and (2) evidence of Fischel's casual use of drugs was prejudicial error. We affirm the conviction.

*Facts.*

The government alleged that on April 8, 1980, an informant set up a purchase of metamphetamine with a drug dealer, Steve Lochen, for an undercover agent. The evidence showed the informant had numerous drug dealings with Lochen in the past. The agent and the informant met with Lochen at Lochen's residence. They drove to a bar at which time Lochen indicated that his source "Ron" was out of town but had left three quarters of an ounce of crystal for Slauyer, another dealer, to sell. Lochen was unable to locate Slauyer, so they drove to a trailer court and parked two to three blocks from Fischel's and Slauyer's trailer house.

The agent gave Lochen $450 for the purchase. Lochen then proceeded to the trailer park where surveillance officers watched him enter the trailer and return to the car approximately ten minutes later with the "crystal." In addition to Lochen's remark that his supplier "Ron" was out of town, he also stated that "Ron" had driven a black TransAm on the trip.

On April 14, 1980, the informant was at Lochen's house when Lochen called Ron Fischel about a sale of "crystal." Lochen indicated to the informant that "Ron" wanted to use up the old batch before the new batch of crystal. Lochen then called the agent and quoted him a price of $1,100.

The agent paid Lochen $1,100, and Lochen, the agent, and the informant again drove to the trailer court. Lochen went to Fischel's and Slauyer's trailer. Lochen later left the trailer with Fischel and another man.[1]

On April 21, 1980, two agents followed Lochen to a bar for the purpose of purchasing methamphetamine. Lochen and the two agents argued about whether Lochen would be paid prior to receiving the drugs. While this argument was taking place, Fischel drove up in a black TransAm. Lochen went to the car and talked to Fischel. When he returned, he told the agent "he was going to check and see how his man wanted to do the deal." He met Fischel on the other side of the bar parking lot. Fischel then drove to the trailer house, and Lochen and the agents went inside the bar. Two additional undercover agents were in the bar. A short while later Fischel and another man returned to the bar. Lochen and Fischel met at the pinball machine. Lochen, Fischel, an unidentified party who came in with Fischel, and a man identified as "Gramps" sat down together at a booth. Lochen and the agents then went outside at which time the methamphetamine was delivered. Lochen indicated that "Ron" had gone to pick up the methamphetamine.

The final transaction took place on April 23, 1980, after receiving a call from the agents for a purchase of methamphetamine. Lochen drove, followed by surveillance, directly to the trailer. He delivered the drug to the agents at the same bar and in turn received $3,600. Lochen and an unidentified male went to two separate banks and then returned to the bar. Lochen gave the money to another dealer, Langmate, who put a large pile of money on Fischel's pinball machine. The money was divided into three piles and Langmate, Lochen and Fischel each took one pile of the money.

On September 26, 1980, and January 20, 1981, one of the agents purchased methamphetamine from Lochen. On both occasions Lochen went to different locations to purchase the drug. Lochen told the informant that he obtained crystal from Langmate

---

1. The jury acquitted Fischel of participating in this transaction.

only "when 'Jerry and Ron' weren't around."

*Statements Attributed to an Alleged Coconspirator.*

Fischel asserts that the sufficiency of the evidence to support his convictions depends solely on whether the trial court correctly ruled on the coconspirator exception to the hearsay exclusion rules under Fed.R.Evid. 801(d)(2)(E). He argues there was not proper foundation to admit the hearsay evidence.

■ The standard for admissibility is set forth in *United States v. Bell,* 573 F.2d 1040 (8th Cir.1978). The government is required to prove by a preponderance of the independent evidence: "(1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy." *Id.* at 1043. *See also United States v. Baykowski,* 615 F.2d 767, 771 (8th Cir.1980).

■ In *United States v. Williams,* 604 F.2d 1102, 1113 (8th Cir.1979), the independent evidence showing a conspiracy may be direct or "totally circumstantial." Here, there exists a combination of both. Consequently, we hold that the evidence taken as a whole allows a reasonable inference of a conspiracy sufficient to satisfy the independent evidence test of rule 801(d)(2)(E) and *Bell.* The trial court correctly applied the *Bell* criteria and at the close of the evidence correctly admitted the statement as non-hearsay.

On the record we have little difficulty in finding sufficient evidence based on the facts to find Fischel and the declarant were coconspirators. Lochen indicated that "Ron" was his source. In *United States v. Lambros,* 564 F.2d 26, 30 (8th Cir.1977), *cert. denied,* 434 U.S. 1074, 98 S.Ct. 1262, 55 L.Ed.2d 779 (1978), we held, "statements of a conconspirator identifying a fellow coconspirator as his source of narcotics are statements made in furtherance of a conspiracy." Similarly, a reference by a declarant about "his people" and going to "his people"

plus an actual purchase was enough evidence to find a conspiracy to sell drugs. *United States v. Fitts,* 635 F.2d 664 (8th Cir.1980). And in *United States v. Nelson,* 603 F.2d 42 (8th Cir.1979), this court held that the district court did not err in admitting evidence where there was an invitation to deal coupled with a naming of the source.

"Ron" was also connected to the trailer where the methamphetamine was purchased and also connected to the black TransAm later driven by Ron Fischel. He was at the bar during the sale and received a portion of the monetary benefits therefrom. In *United States v. Miller,* 644 F.2d 1241, 1244 (8th Cir.), *cert. denied,* 454 U.S. 850, 102 S.Ct. 289, 70 L.Ed.2d 140 (1981), we held that where a defendant shared in the proceeds of sale, evidence existed to support an inference that the defendant was acting in concert with another.

*Evidence of Casual Use of Drugs.*

■ Fischel next asserts that the admission of evidence of Fischel's casual use of drugs was prejudicial error. The indictment indicated that the conspiracy ended on April 23, 1980. The informant, however, was allowed to testify that two months later Fischel had provided methamphetamine at a party. Fischel argues that this is highly prejudicial and outweighs the relevancy requirement under Fed.R.Evid. 403. The prosecution urges that the defense argued that Lochen was trying to hide the fact that he was the real drug dealer, and also argued that someone other than Fischel could have been the true source. To rebut these contentions, the government introduced the above evidence contending it was both material and relevant under Fed.R. Evid. 404(b) and 403.

We find this evidence to be relevant and material to a degree that outweighs the prejudicial effect and impact. *See United States v. Sherer,* 653 F.2d 334 (8th Cir.), *cert. denied,* 454 U.S. 1034, 102 S.Ct. 573, 70 L.Ed.2d 478 (1981); *United States v. Clemons,* 503 F.2d 486 (8th Cir.1974). Providing use of drugs shows an offense similar in kind and reasonably close to the time of the alleged criminal charges. *United States v.*

803

*Lewis,* 423 F.2d 457 (8th Cir.), *cert. denied,* 400 U.S. 905, 91 S.Ct. 146, 27 L.Ed.2d 142 (1970). In the recent case of *United States v. Marshall,* 683 F.2d 1212 (8th Cir.1982) we stated:

> The rules for admission of other crimes or bad act evidence are well established: (1) the evidence of the bad act must be admissible on a material issue raised; (2) the evidence must be similar in kind and reasonably close to the charge at trial; (3) the evidence of the other crime or bad act must be clear and convincing; and (4) the probative value of the evidence must not be outweighed by its prejudice. *United States v. Frederickson,* 601 F.2d 1358, 1365 (8th Cir.), *cert. denied,* 444 U.S. 934, 100 S.Ct. 281, 62 L.Ed.2d 193 (1979).

*Id.* at 1215.

We further observed:

> In reviewing the admissibility of evidence this court applies an abuse of discretion standard. *United States v. Moss,* 544 F.2d 954, 960–61 (8th Cir.1976), *cert. denied,* 429 U.S. 1077, 97 S.Ct. 822, 50 L.Ed.2d 797 (1977). The trial court can in its discretion admit relevant evidence of other criminal and bad acts and "reversal is only commanded when 'it is clear that the questioned evidence has no bearing upon any of the issues included.'" *United States v. Conley,* 523 F.2d 650, 654 (8th Cir.1975), *cert. denied,* 424 U.S. 920, 96 S.Ct. 1125, 47 L.Ed.2d 327 (1976), *citing United States v. Thompson,* 503 F.2d 1096, 1098 (8th Cir.1974). *Accord, United States v. Young,* 618 F.2d 1281, 1289 (8th Cir.), *cert. denied,* 449 U.S. 844, 101 S.Ct. 126, 66 L.Ed.2d 52 (1980).

*Id.* at 1215.

We find the evidence admissible under Fed.R.Evid. 404(b) and 403.

*Conclusion.*

We are satisfied that Fischel's contentions on appeal are without merit. Accordingly, we affirm the district court.