# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1467

_____

XO Missouri, Inc., Southwestern Bell   *
Telephone Company, L.P., doing   *
business as Southwestern Bell   *
Telephone Company,   *
  * Appeal from the United States
      Plaintiffs - Appellees,   * District Court for the Eastern
  * District of Missouri
  v.   *
  *
City of Maryland Heights,   *
  *
      Defendant - Appellant.   *

_____

Submitted: December 15, 2003
Filed:  April 1, 2004

_____

Before MELLOY, BEAM, and COLLOTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

XO Missouri, Inc. ("XO") and Southwestern Bell Telephone, L.P. ("Bell") brought separate actions to prevent enforcement of Maryland Heights Ordinance No. 2000-1909 (the "Ordinance") under which the City of Maryland Heights (the "City") attempted to regulate and establish fees for telephone company use of public utility

rights-of-way. The district court[1] consolidated the cases and ruled in favor of XO and Bell on various cross motions for summary judgment.

In a first order, the district court found that Bell enjoyed a perpetual franchise from the State of Missouri which limited the ability of any municipality to regulate Bell's use of public utility rights-of-way. Accordingly, the district court found the Ordinance unenforceable as against Bell. In a second order, the district court found the Ordinance invalid under the Federal Telecommunications Act of 1996, 47 U.S.C. § 253(a) and (c). The district court specifically found that the City's fees for use of its rights-of-way were unreasonable and that other restrictions on use operated as impermissible barriers to market entry for new telecommunication providers. In a third order, the district court determined that a Missouri telecommunications statute, Missouri Senate Bill 369 (codified at R.S. Mo. §§ 67.1830-1846 (2001) ("Senate Bill 369")), was facially valid under the Missouri Constitution, placed even more restrictive limitations on municipal authority than did the Federal Telecommunications Act of 1996, and rendered the entire Ordinance invalid.

On appeal, the City expressly concedes that if we find Senate Bill 369 valid under the Missouri Constitution, Senate Bill 369 partially invalidates the Ordinance. The City, however, presents no argument in its brief to rebut the district court's finding that the offending provisions in the Ordinance are non-severable and that the Ordinance is invalid as a whole. By failing to address this issue on appeal, the City waived any challenge to the district court's severability determination. See Halabi v. Ashcroft, 316 F.3d 807, 808 (8th Cir. 2003) (issues not raised in a party's appeal brief are deemed waived under Rule 4 of the Federal Rules of Appellate Procedure).

---

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

The City's concession and waiver greatly simplify the issues that we must address on appeal. Because we concur in the district court's finding that Senate Bill 369 is valid under the Missouri Constitution, and because the City waived the issue of severability, we affirm the district court's judgment and hold the Ordinance invalid in its entirety. In light of this result, it is not necessary for us to address the district court's alternate holdings on the franchise and Federal Telecommunications Act of 1996 issues.[2]

I.

The majority of the factual record relates to issues we do not reach: Bell's history in Missouri, the basis of Bell's claim regarding vested franchise rights, and the reasonableness or unreasonableness of the City's fees under the Federal Telecommunications Act of 1996. From this record, we note only that Bell has maintained telephone lines in the area now encompassed by the City since before the City incorporated, and XO is a telecommunications provider who seeks to use the City's rights-of-way.

The issue we do reach, the facial challenge to the validity of Senate Bill 369 under the Missouri Constitution, presents a pure question of law. For the purposes of our analysis, only a few undisputed facts are relevant. First, the City is a political subdivision of Missouri. Second, the City passed the Ordinance before Missouri

---

[2]Below, the City raised the issue of subject matter jurisdiction and the question of whether the Federal Telecommunications Act of 1996 impliedly creates a private enforcement right. We have federal question subject matter jurisdiction over Bell's constitutional claim. 28 U.S.C. § 1331. We elect to exercise supplemental jurisdiction over the parties' state law claims. 28 U.S.C. § 1367(a). Because subject matter jurisdiction exists, and because our state law ruling completely disposes of this appeal, we need not determine whether Congress intended the Federal Telecommunications Act of 1996 to impliedly convey a private enforcement right.

-3-

passed Senate Bill 369. Third, the title of Senate Bill 369 is "An Act to amend Chapter 67, RSMo, by adding thereto nine new sections relating to utility access to public rights-of-way." And fourth, the provisions of Senate Bill 369 address only amendments to chapter 67 of the Revised Statutes of Missouri.

II.

We review the district court's grant of summary judgment de novo. See Leonard v. Southwestern Bell Corp. Disability Income Plan, 341 F.3d 696, 700 (8th Cir. 2003).

The City argues three separate bases for finding the Missouri statute unconstitutional.[3] First, the City argues that Senate Bill 369 violates Article III, Section 23 of the Missouri Constitution which provides, "No bill shall contain more than one subject which shall be clearly expressed in its title. . . ." Senate Bill 369 is entitled, "An Act to amend chapter 67, RSMo, by adding thereto nine new sections relating to utility access to public rights-of-way." Senate Bill 369, in fact, does exactly what the title describes. Senate Bill 369 does not contain amendments to other chapters of the Revised Statutes of Missouri, and all of the provisions of Senate

---

[3]The City actually presents a fourth argument, an "impairment of municipal contracts" argument, in which it alleges that Senate Bill 369 violates Article III, Section 39(5) of the Missouri Constitution. This section provides, "The general assembly shall not have the power: To release or extinguish or to authorize the releasing or extinguishing, in whole or in part, without consideration, the indebtedness, liability or obligation of any corporation or individual due this state or any county or municipal corporation." Mo. Const. art. III, § 39(5). The City raised this issue only in its reply brief on appeal, did not raise this issue below, and did not raise this issue in its main appeal brief. In general, we do not address issues raised for the first time on appeal, nor would it be appropriate to address an issue raised only in a reply brief. See Cavegn v. Twin City Pipe Trades Pension Plan, 333 F.3d 879, 882 n.2 (8th Cir. 2003).

Bill 369 relate to utilities' access to public rights-of-way. The Missouri Supreme Court, in Hammerschmidt v. Boone County, 877 S.W.2d 98, 101 (Mo. 1994) (en banc), held that the purpose of Article III, Section 23 is to prevent surprise within the legislative process. Senate Bill 369 does not contain more than one subject nor does it contain any legislative "surprises" that might violate Section 23.

Second, the City argues that Senate Bill 369 makes an irrevocable grant of a special privilege and is retrospective in its operation in violation of Article I, Section 13 of the Missouri Constitution. Regarding the special privileges portion of this argument, the City fails to identify a special privilege granted by Senate Bill 369. Accordingly, Senate Bill 369 survives this aspect of the City's Article I, Section 13 challenge.

While it is true that the City passed the Ordinance before the state enacted Senate Bill 369, the City's retrospective operation argument is simply misplaced. It does not matter that the City passed the Ordinance first. Morrow v. City of Kansas City, 788 S.W.2d 278, 281 (Mo. 1990) (en banc) ("The powers granted a municipality must be exercised in a manner not contrary to the public policy of the state and any provisions in conflict with prior or subsequent state statutes must yield."); Carson v. Oxenhandler, 334 S.W.2d 394, 397 (Mo. Ct. App. 1960); State ex rel. Volker v. Carey, 136 S.W.2d 324, 325 (Mo. 1940) ("When the ordinances or charter provisions are or become in conflict with *prior or subsequent* state statutes, such ordinances or charter provisions are or become, void, and must yield to the higher law.") (emphasis added). The City, as a political subdivision of the state, cannot exceed the authority granted by the state and must accept the state's election to limit that authority. See Missouri ex rel Kemper v. St. Louis, Kansas City, & N. Ry. Co., 1881 WL 175, *3 (Mo. Ct. App. 1881) ("[I]t is competent to the Legislature to modify [municipal powers] at pleasure, or to take them wholly away.").

Third, the City argues that Senate Bill 369 impermissibly limits the City's police powers. This argument is merely a narrowly defined repackaging of the City's prior argument. As just explained, a state is free to define the scope of its cities' powers and cities must operate within the limits imposed by the state. There is no reason to distinguish a state's police powers from other state-conferred authority. Inherent police power belongs to the states. Political subdivisions of a state have no inherent claim to such power. See U.S. Const., amend. X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States, respectively, or to the people."). Accordingly, the only police power a city may hold is police power conferred by the state. It follows from the discussion above that if a state elects to grant certain police powers to a city, it is free to later rescind or limit those powers.

Further, we find no conflict between Senate Bill 369 and the City's claimed police power. No conflict exists because Missouri specifically preserved for its cities the ability to take action "through reasonable exercise of its police powers, to impose rights, duties and obligations on all users of the right-of-way, including the political subdivision, in a reasonable, competitively neutral and nondiscriminatory and uniform manner . . ." R.S.Mo. § 67.1830(6). Even if a conflict did exist, however, no question of constitutional magnitude would arise. Rather, the specific limitations of Senate Bill 369 would simply serve to limit Missouri's more general grant of police power to its cities. See Greenbriar Hills Country Club v. Dir. of Rev., 935 S.W.2d 36, 38 (Mo. 1996) (en banc) (holding that when the same subject matter is addressed in general terms in one statute and in specific terms in another, the more specific controls over the more general).

The judgment of the district court is affirmed.

_____