# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2248

_____

United States of America,          *
                                   *
              Plaintiff - Appellee, *
                                   *    Appeal from the United States
     v.                            *    District Court for the Northern
                                   *    District of Iowa.
Troyce Allen Lewis,                *
                                   *
              Defendant - Appellant. *

_____

Submitted: November 15, 2005
Filed:  February 7, 2006

_____

Before MURPHY, McMILLIAN[1], and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge.

A jury convicted Troyce Allen Lewis of possessing cocaine base and cocaine with an intent to distribute within 1,000 feet of a school, and the district court[2] sentenced him to 360 months.  Lewis appeals, arguing that the district court erred by excluding evidence he wanted to introduce, denying his motion for a new trial, and imposing an unreasonable sentence.  We affirm.

_____

[1]The Honorable Theodore McMillian died on January 18, 2006.  This opinion is being filed by the remaining judges of the panel pursuant to 8th Cir. Rule 47E.

[2]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

A federal grand jury issued a two count indictment on November 12, 2003, charging Lewis with one count of knowingly and intentionally possessing cocaine base with an intent to distribute within 1,000 feet of a school, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 860, and one count of knowingly and intentionally possessing cocaine with an intent to distribute within 1,000 feet of a school, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 860.

The government introduced evidence at trial that in early November 2003 a safe owned by Arthur Graves was left with Troyce Lewis who was a friend of Graves and knew him to be a drug dealer. Lewis asked Jayme Jeffries whether he could store some of Graves' "stuff "in her garage, and she agreed. Lewis put a bag with the Gordmans name on it in Jeffries' garage, and she gave him a key to the garage. Jeffries testified that Lewis returned the next day looking high and told her that the bag contained $40,000 worth of stuff and that it would cost her life if something happened to it. Jeffries later opened the bag and discovered that it contained a safe. She had served as a confidential informant to the police for five years and decided to contact them about her discovery. Her property happened to be adjacent to a private school, the Walnut Ridge Baptist Academy.

Officers William Herkelman, Dennis O'Neill, and Michael McNamee went to Jeffries' residence on November 10 in response to her call. They searched the garage and the Gordmans bag in which they found a locked safe. They took the bag and safe with them and obtained a search warrant to open the safe after a trained narcotics dog alerted to it. Inside the safe they found 252.36 grams of cocaine base packaged in three baggies and 310.6 grams of powder cocaine packaged in five baggies.

On November 11 Lewis returned to Jeffries' residence. She testified that when he discovered that the safe was missing, he demanded its return and again threatened her life. Jeffries called the police, and Herkelman and McNamee drove to her house. Posing as her brothers, the officers handed Lewis the bag containing the empty safe.

When Lewis discovered that the contents of the safe were missing, he began to swear and threw it to the ground. The officers identified themselves as police, and Lewis attempted to run away but they tackled and arrested him. A search of his person yielded a set of keys and $175 in cash, all of which was returned to him. After the officers asked for the key to his Ford Explorer so they could move it, they eventually found a key ring in his crotch. On the ring were keys to his vehicle, to Jeffries' garage, and to Graves' safe. The cash that had been returned to Lewis was later found under the front seat of the police car in which he was transported to the station.

Before trial the government moved in limine to exclude potential impeachment evidence related to Jeffries, who had been charged in September 2004 with filing a false police report in connection with an August 2004 rape. Lewis did not resist the motion, and the court granted it after concluding that the evidence was inadmissible under either Federal Rule of Evidence 609, because Jeffries had not been convicted of the charge, or Rule 608, because her fifth amendment privilege precluded impeachment by this specific instance of conduct.

The trial lasted for three days. The government introduced testimony from Jeffries and from officers Herkelman, O'Neill, and McNamee, who reported on the seizure of the safe and its contents and their interactions with Jeffries and Lewis. Lewis moved for acquittal at the close of the government's case; the motion was denied. The defense presented evidence from three witnesses. Lewis' wife testified about his employment history, his relationship with Graves, and the delivery of the safe. She stated that the couple was struggling financially and that she had not seen signs that her husband was involved in drug distribution. Lewis also called a reserve police officer, Larry Thompson, who testified that Lewis had been attempting to find Graves for him so that he could execute an outstanding felony arrest warrant and that in their conversations about Graves, Lewis had never mentioned anything about a safe. Lewis took the stand and testified that he had had no knowledge about what was inside the safe. He stated that he had received three unidentified keys from Graves on

November 10 and that he had only returned to Jeffries' house on November 11 because she had called him for her garage key. He claimed that it was Jeffries who had placed the safe in her garage and that it had not been covered with a bag at the time. Lewis testified that he had informed Thompson about Graves' outstanding warrant and his whereabouts, which eventually contributed to his arrest.

The government raised a hearsay objection to a number of questions defense counsel wanted to ask. These questions included what Lewis had told Thompson about his drug history, what Lewis had told his wife about Graves, what Lewis had said to the man who brought him the safe, what Lewis and Graves discussed about the safe, and what Lewis told the officers when he was arrested. Defense counsel argued that the statements were not hearsay for several reasons: that the declarant was testifying at trial, that the government had opened the door to an area of inquiry, or that the evidence was not offered for the truth of the matter. The court found that the contested evidence was hearsay and sustained the government's objections.

In its rebuttal the government recalled Herkelman and called two other witnesses: officer Adam Gailbraith and Richard Barragan, an inmate in the jail in which Lewis had been incarcerated. Herkelman and Gailbraith testified about an interview they had had with Lewis in which he admitted that he had planned to use some of the drugs that were in the safe although he made conflicting statements about his knowledge of the safe's contents. Barragan testified about statements Lewis had made to him while they shared a jail cell.

Lewis again moved for acquittal at the conclusion of all the evidence. The court denied the motion, and the case went to the jury which returned a verdict convicting Lewis of violating 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), 851, and 860. Lewis filed separate written motions for acquittal and for a new trial, which the court denied.

At the sentencing hearing, the court adopted the guideline calculations in the presentence report for a base offense level of 36.  It added a two level enhancement for obstruction of justice based on its finding that Lewis had testified falsely during trial, in particular by "denying knowledge and denying guilt in the facts and circumstances of this case" and by making the specific false statements identified by the government.   With a total offense level of 38 and criminal history category VI, Lewis' guideline range was 360 months to life.  The court recognized that the statutory minimum under 21 U.S.C. § 841(b)(1)(A) was twenty years and that the 18 U.S.C. § 3553(a) factors needed to be considered.  It indicated that it had considered the facts and circumstances of his offenses, the letters submitted on his behalf, his prior criminal history, the seriousness of the conduct at issue, the amount of drugs involved, the fact that the crimes occurred in proximity to a school, and its finding of perjury.  The court also articulated that it was choosing a sentence at the bottom of the guideline range which in its opinion was reasonable based on the § 3553(a) factors.  The court then imposed concurrent 360 month sentences.

Lewis appeals.  He argues that the district court erred by restricting his cross examination of Jeffries, by excluding as hearsay his out of court statements and those of Larry Thompson, by denying his motion for a new trial, and by imposing an unreasonable sentence.

Lewis alleges that the district court abused its discretion by not permitting him to impeach Jeffries with her dismissed charge of filing a false police report.  Lewis asserts that the evidence was admissible under Rule 404(b) to show intent, motive, or plan.  Lewis argues that Jeffries' motive and plan were to "attempt to redeem herself and receive favorable treatment" in her case by making false charges against  him.  Lewis claims that a lower standard of admissibility should apply for a defendant seeking to introduce impeachment evidence, citing cases from other circuits.  See United States v. Aboumoussallem, 726 F.2d 906 (2d Cir. 1984), United States v.

Cohen, 888 F.2d 770 (11th Cir. 1989).  He does not claim on appeal that the district court erred in excluding the evidence under Rules 608 and 609.

The government responds that our review is for plain error only since Rule 404(b) was not raised in the district court.  It further argues that the evidence would be inadmissible under Rule 404(b) for the same reasons that it could not come in under Rule 608 because Jeffries' fifth amendment protection overrides the reason for offering a specific instance of conduct for impeachment.  See United States v. Burch, 490 F.2d 1300, 1302-03 (8th Cir. 1974).  It points out that Rule 404(a)(3) specifically refers to Rule 608 as the rule controlling the use of evidence to prove the character of a witness.  The government also asserts that Lewis had a number of other means to impeach Jeffries and that he has not shown that evidence of her dismissed charge would in fact have impeached her.   Moreover, Lewis' argument that Jeffries had a motive to lie about him was undercut by the fact that her arrest on the charge of filing a false report occurred nearly a year after she had reported the safe in her garage.

Lewis disagrees that plain error review applies and claims the district court should have allowed him to make an offer of proof to show the relevance of the evidence.  He contends the government's arguments only go to the weight rather than the admissibility of the evidence.

Evidence of prior bad acts is admissible under Rule 404(b) if "(1) it is relevant to a material issue; (2) it is similar in kind and not overly remote in time to the crime charged; (3) it is supported by sufficient evidence; and (4) its potential prejudice does not substantially outweigh its probative value."  United States v. Jackson, 278 F.3d 769, 771 (8th Cir. 2002) (internal quotation omitted).  Even if Lewis had sought admission of the evidence under this rule and it had been deemed relevant, its probative value would have been outweighed by the likelihood of confusion and prejudice.  Jeffries' dismissed charge of filing a false report and her related rape both occurred many months after she called the police about Lewis and the safe.  Evidence

about this charge would have had minimal relevance and probative value, would have required considerable time, and would have potentially confused the jury. Although Lewis now complains that the district court should have allowed him to make an offer of proof about this evidence, he did not offer to make one at trial. We conclude that the district court did not abuse its discretion by excluding the evidence at trial and certainly committed no plain error by not admitting it sua sponte under Rule 404(b).

Lewis argues that the district court abused its discretion by excluding as hearsay out of court statements by himself and Larry Thompson. Lewis does not argue that the statements fall within an exception to the hearsay rule, but rather that a statement by a declarant who testifies at trial is not hearsay. In support he cites United States v. Bohr, 581 F.2d 1294 (8th Cir. 1978), where out of court statements by prosecution witnesses were admitted. Although the challenged statements in Bohr had not been offered for the truth of the matter asserted, Lewis focuses on dicta in the case which said that "where the declarant is also a witness, the rationale of the hearsay rule does not apply". Id. at 1304. The government responds that Lewis' argument for a blanket exemption from the hearsay rule where the declarant is a witness is unfounded and that the statements offered by Lewis do not come within any of the specific exclusions from the definition of hearsay evidence found in Rule 801(d)(1).

A statement offered to prove the truth of the matter asserted is hearsay unless it originates while a declarant is testifying at trial. See Fed. R. Evid. 801(c). The fact that past out of court statements were made by a witness testifying at trial does not remove them from the reaches of the hearsay rule if they are offered to prove the truth of the matter asserted. See, e.g, United States v. Water, 413 F.3d 812, 818 (8th Cir. 2005). The challenged statements in Bohr were not admitted for the truth of the matter so they were not hearsay, and the dicta cited by Lewis is not controlling. We adhere to the general rule that out of court statements offered for the truth of the matter asserted are hearsay unless they fit within one of the recognized exceptions to the hearsay rule. See Fed. R. Evid. 802; United States v. Martin, 59 F.3d 767, 769

(8th Cir. 1995). Since the evidence offered by Lewis was hearsay as defined by the rule and does not fit within any of the exceptions, the district court did not abuse its discretion by excluding it.

Lewis argues that the district court erred by denying his motion for a new trial. He claims that a new trial is required in the interest of justice because there was insufficient evidence that he had knowingly possessed the drugs found in the safe. Lewis cites his testimony that he had not known the safe contained drugs and that he did not have a key for it until after it had been seized by the police. He claims this testimony was unrefuted and that the officers' description of his reaction when he realized the safe was empty was consistent with his testimony that he thought it contained money. Lewis also points to specific statements during his police interview that are consistent with his testimony and complains that the district court analyzed the weight of the evidence incorrectly in ruling on his motion for a new trial.

The government responds that the evidence was sufficient for a finding of guilt. It recounts what it characterizes as strong circumstantial evidence that Lewis had the key to the safe and knew that it contained drugs. This evidence included his statements to Jeffries, his knowledge about Graves, his interactions with the police and his description of the safe's contents during his interview, and his past experience as a drug user and offender.

We will not reverse the denial by a district court of a motion for a new trial unless there has been an abuse of discretion and the evidence indicates that a "miscarriage of justice may have occurred." United States v. Serrano-Lopez, 366 F.3d 628, 634 (8th Cir. 2004). In this case there was evidence that Lewis had access to the key at the time he sought to retrieve the safe from Jeffries, that he knew that Graves had just transported cocaine to Waterloo, that he had described the safe's contents to Jeffries as "$40,000 worth of stuff" and worth her life, and that he also had the key to Jeffries' garage. According to law enforcement officers, he admitted to them that he

had planned to use some of the drugs that were in the safe. The trial record reveals sufficient evidence from which the jury could find that Lewis knowingly possessed the drugs contained in the safe and that the verdict was not contrary to the weight of the evidence. The district court did not abuse its discretion by denying the motion for a new trial.

Lewis also alleges that the court erred in sentencing him. He claims that the court miscalculated his guideline range because the two level enhancement for obstruction of justice was unsupported and that it failed to analyze the § 3553(a) factors properly and imposed an unreasonable sentence. The government responds that the court imposed a reasonable sentence after properly applying an enhancement for obstruction and considering the statutory sentencing factors.

In order to base an obstruction of justice enhancement on a defendant's trial testimony, the district court must find by a preponderance of the evidence that he perjured himself. See United States v. Taylor, 207 F.3d 452, 455 (8th Cir. 2000) (internal quotation omitted). The district court explicitly articulated its finding that Lewis committed perjury while testifying and agreed with the government's listing of specific parts of his testimony which were false, including his "denial of any knowledge of the contents of the safe" in light of considerable evidence to the contrary. Although Lewis claims that there were inconsistencies in the evidence, the district court's finding that Lewis gave perjurious testimony was a permissible view of the evidence and not clearly erroneous. See United States v. Rice, 49 F.3d 378, 385 (8th Cir. 1995) ("[w]here there are two permissible views of the evidence, the [district court's] choice between them cannot be clearly erroneous" (internal quotation omitted)).

We determine the reasonableness of a sentence by examining whether the district court (1) determined the appropriate guideline range, (2) analyzed whether a departure would be appropriate, and (3) examined other statutory factors in § 3553(a).

See United States v. Haack, 403 F.3d 997, 1002-03 (8th Cir. 2005). Lewis claims that the court failed to analyze the § 3553(a) factors sufficiently and only made a perfunctory reference to them. He also argues that the court did not adequately account for his cooperation with Larry Thompson, the sentencing disparity between crimes involving cocaine base and cocaine, or any potential mitigating facts. The government responds that the court addressed the sentencing factors sufficiently, that the court made reference to the cocaine sentencing disparity, and that the sentence is reasonable. The government also alleges that Lewis cooperated with Thompson "only to gain access to Arthur Graves' drugs."

A sentence falling within the applicable guideline range is presumptively reasonable, see United States v. Lincoln, 413 F.3d 716, 717 (8th Cir. 2005), and sentencing courts are not obligated to provide "robotic incantations [about] each statutory factor . . . considered." See United States v. Lamoreaux, 422 F.3d 750 (8th Cir. 2005). In this case the district court sentenced Lewis at the bottom of the applicable guideline range after referring to the individual statutory factors, listing relevant facts, and stating that it considered the sentence reasonable. We conclude after studying the record that Lewis has not shown that his sentence was unreasonable.

Accordingly, we affirm the judgment of the district court.

_____