# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2340

_____

United States,                          *
                                        *
          Appellee,                     *
                                        *   Appeal from the United States
     v.                                 *   District Court for the
                                        *   District of South Dakota.
Duane Collins Thundershield,            *
                                        *
          Appellant.                    *

_____

Submitted:  November 17, 2006
Filed:  January 22, 2007

_____

Before LOKEN, Chief Judge, MELLOY, Circuit Judge, and SCHILTZ,[1] District
     Judge.

_____

SCHILTZ, District Judge.

     Duane Collins Thundershield, Jr. ("Thundershield") was convicted by a jury of
one count of sexual abuse of a person "incapable of appraising the nature of the
conduct; or . . . physically incapable of declining participation in, or communicating
unwillingness to engage in, that sexual act[.]"  18 U.S.C. § 2242(2) (2000) (amended

_____

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District
of Minnesota, sitting by designation.

2006).  The district court[2] sentenced Thundershield to a term of 151 months in prison and 10 years of supervised release.  Thundershield appeals his sentence, arguing that the district court erred in applying a two-level obstruction-of-justice enhancement.  Thundershield also argues that his sentence is unreasonable.  We affirm.

## I.  Background

Thundershield is a 22-year-old member of the Spirit Lake Sioux Indian Tribe.  His victim, Marisha Mesteth Loefer ("Loefer"),[3] is his 24-year-old step-sister.  Thundershield's father, Duane Sr., married Loefer's mother, Susan, when Thundershield was 11.  For the most part, Thundershield lived with his father and step-mother until he turned 18.  At the time of the offense that is the subject of this appeal, Thundershield lived at the home of his aunt, Margaret Cutt, in Wanblee, South Dakota.

On the evening of February 12, 2005, Thundershield visited his father and stepmother's house in Wanblee.  Both his father and stepmother were there, along with a number of other relatives.  Loefer was also there, visiting from Sioux Falls.  Everybody drank a lot, and eventually Susan helped the very intoxicated Loefer to bed.

What happened next is disputed.  At trial, Thundershield testified that he left the home after a family argument, returned to his aunt's house, watched television

---

[2]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota.

[3]In the parties' briefs and in the indictment, Loefer's name is spelled "Loafer." It appears from the trial transcript, however, that the correct spelling is "Loefer."  Tr. 3-4.

with his nephew, and then slept until he was awakened by the police the next day. Thundershield's nephew corroborated this version of events.

According to Susan, after she put Loefer to bed, she returned to the living room. Thundershield left the living room sometime later, and, when Thundershield did not promptly return, Susan grew suspicious and went looking for him. Susan noticed that the door to Loefer's bedroom was ajar, opened it, and saw Thundershield raping Loefer (who was unconscious). Susan threw Thundershield out of the house and, with difficulty, revived Loefer. Loefer was taken by ambulance to Pine Ridge Hospital, where she was found to have vaginal bruising. No seminal fluid was present, and Thundershield's DNA did not match any sample taken from Loefer.

During the investigation and trial of the case, Thundershield changed his version of events a number of times. Most significantly, Thundershield gave a taped statement to FBI agent Charles Cresalia when Cresalia arrested him on July 1, 2005. In that statement, Thundershield claimed that he went into Loefer's bedroom because he wanted to have sex with her, but that Susan interrupted him "[b]efore he could get anything started." Tr. 235-36; *see also* Thundershield Tr. 26-27, 49, 52, 62.[4] At trial, Thundershield testified that he had lied to Cresalia. Thundershield insisted that he never wanted to have sex with Loefer and that he never went into her bedroom. Thundershield Tr. 26-27, 28, 42, 49.

Thundershield made a number of other conflicting statements. For example:

- Thundershield told Cresalia that he was drunk on the night of the alleged rape, but he testified at trial that he had not been drunk and that his earlier statement to Cresalia was a lie. Thundershield Tr. 35.

_____

[4]Thundershield's trial testimony is separately bound and paginated.

- On the day after the alleged rape, Thundershield told Bureau of Indian Affairs investigator Carl Martinez that, when he had arrived at his father's house on the prior evening, only his brother was home, and he and his brother watched television for about an hour until his father, stepmother, and Loefer arrived. (Shortly after their arrival, Thundershield told Martinez, Thundershield went to his aunt's home.) Tr. 204-05. At trial, Thundershield testified that he had lied to Martinez. Thundershield admitted that a number of family members, including Loefer, had been at the house when he arrived. Thundershield Tr. 33-34, 36.

- Thundershield testified at trial that Cresalia had called him in late June — before Cresalia arrested him — to arrange a meeting for July 1. Thundershield Tr. 40-41. Cresalia adamantly denied doing so. Tr. 229.

The jury convicted Thundershield of sexual abuse. At sentencing, the government requested an enhancement for obstruction of justice based on the lies that Thundershield told to investigators and based on Thundershield's alleged perjury during trial. The district court found that Thundershield "committed perjury by providing false information" and specified the pages of the trial transcript on which evidence of Thundershield's perjury appeared. Sentencing Tr. 7. On those pages, Thundershield denies sexually assaulting Loefer, claims that his statements to Cresalia were lies, and claims that Cresalia called him prior to his July 1 arrest.

Based on its finding of perjury, the district court applied a two-level enhancement to Thundershield's offense level under U.S.S.G. § 3C1.1 (2005),[5]

---

[5]Thundershield was sentenced under the 2005 edition of the United States Sentencing Guidelines. Presentence Investigation Report § 12 ("PSR").

resulting in a sentencing range of 151 to 188 months.[6] The district court then sentenced Thundershield to 151 months in prison, with a 10-year term of supervised release. Thundershield appeals that sentence.

## II. Analysis

In *United States v. Booker*, 543 U.S. 220 (2005), the United States Supreme Court rendered the Sentencing Guidelines advisory, but not irrelevant. The Guidelines "remain[] the critical starting point for the imposition of a sentence under § 3553(a)." *United States v. Mashek* , 406 F.3d 1012, 1016 n.4 (8th Cir. 2005). In imposing a sentence, district courts should first determine the proper sentencing range under the Guidelines, then analyze whether any departure or variance from that range is appropriate, and finally apply the factors set forth in 18 U.S.C. § 3553(a). *See United States v. Rivera*, 439 F.3d 446, 448 (8th Cir. 2006). In reviewing a sentence, we ask first whether the district court correctly applied the Guidelines, and then whether the sentence was reasonable in light of the § 3553(a) factors. *Booker*, 543 U.S. at 261; *United States v. Hadash*, 408 F.3d 1080, 1082 (8th Cir. 2005); *see also United States v. Beal*, 463 F.3d 834, 836 (8th Cir. 2006) (standard of review is whether the sentence was reasonable and whether the district court abused its discretion), *pet. for cert. filed*, No. 06-8498 (Dec. 21, 2006).

### A. Obstruction-of-Justice Enhancement

We review the district court's construction and application of the Sentencing Guidelines de novo. *United States v. Nichols*, 416 F.3d 811, 821 (8th Cir. 2005), *cert.*

---

[6]On page 26 of his opening brief, Thundershield states that his sentencing range, including the enhancement, was 121 to 151 months, and that eliminating the enhancement would yield a range of 97 to 121 months. According to the PSR, however, the original range, without the enhancement, was 121-151 months. PSR ¶¶ 12-21, 39.

*denied*, 126 S. Ct. 1633 (2006), *and cert. denied*, 126 S. Ct. 1807 (2006). But "[w]hether [Thundershield] committed perjury and in doing so obstructed justice is a factual finding, and we will reverse the district court's imposition of a sentencing enhancement only upon a showing of clear error." *United States v. Garcia-Gonon*, 433 F.3d 587, 592 (8th Cir. 2006). The government bears the burden of proving the facts necessary to support a finding of obstruction by a preponderance of the evidence. *United States v. Flores*, 362 F.3d 1030, 1037 (8th Cir. 2004); *United States v. O'Dell*, 204 F.3d 829, 836 (8th Cir. 2000).[7]

> Section 3C1.1 of the Guidelines provides:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. 3C1.1. A finding of perjury is sufficient to support an enhancement under this Guideline. *O'Dell*, 204 F.3d at 836. But a district court cannot find that a defendant committed perjury "simply because a defendant testifies on his own behalf and the jury disbelieves him." *Flores*, 362 F.3d at 1037 (8th Cir. 2004) (citation and quotations omitted). Instead, the district court must find that the defendant gave "false testimony concerning a material matter with the willful intent to provide false

---

[7]At the time of Thundershield's conviction, the statutory maximum term of imprisonment for a violation of 18 U.S.C. § 2242 was 20 years. 18 U.S.C. § 2242 (2000). Because Thundershield's prison sentence is below this statutory maximum, he cannot, and does not, challenge the propriety of the district court's application of the preponderance-of-the-evidence standard in finding sentence-enhancing facts. *See Booker*, 543 U.S. at 233; *Garcia-Gonon*, 433 F.3d at 593.

testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993).

Thundershield raises various objections to the manner in which the district court enhanced his sentence under U.S.S.G. § 3C1.1. Before turning to those objections, we note that there is little doubt that an enhancement under the Guideline was available. The Guideline applies not only to conduct that occurs at trial, but also to conduct that occurs during the investigation of a charge. By Thundershield's own admission, he told one set of lies to FBI agent Cresalia and another set of lies to BIA agent Martinez. Those lies involved the heart of the case — Thundershield's activities on the evening of the alleged rape. The district court found that, at trial, Thundershield told yet more lies. As to certain facts (such as whether Thundershield went into Loefer's bedroom), Thundershield argues that he lied to investigators but told the truth at trial, while the government argues that Thundershield told the truth to investigators but lied at trial. Everyone agrees, though, that Thundershield lied.

Thundershield first argues that the district court failed to make the findings necessary to support an obstruction-of-justice enhancement based on perjury. We cannot agree. The district court specifically found that Thundershield had lied at trial ("I find by a preponderance of the evidence that the defendant committed perjury"), cited the pages of the transcript on which his perjury occurred ("particularly on pages 35, 36, 40, 46, 50, 61 to 62, and 64 and 65 of the transcript of the defendant's trial testimony"), found that the false testimony was material ("I also find the defendant's perjury concern[ed] material matters"), and found that Thundershield's perjury was willful ("I also find the defendant's perjury . . . was willfully done"). Sentencing Tr. 7. The district court made all of the findings necessary to support an obstruction-of-justice enhancement.

Thundershield next argues that the district court's findings were clearly erroneous. We disagree. Thundershield either lied during the investigation, or during

trial, or both. There is absolutely no doubt that he lied. The district court concluded that Thundershield's statements to Cresalia were closer to the truth than his statements to the jury, and that conclusion is supported by the evidence. For example, the description that Thundershield gave Cresalia of the events of the night of the alleged rape, unlike the description that Thundershield gave at trial, closely matched the descriptions of the other witnesses. Thundershield Tr. 46-47, 49-50; *cf. Garcia-Gonon*, 433 F.3d at 592 n.3 (describing inconsistencies in the defendant's testimony that supported the district court's finding of perjury). The district court also concluded that Thundershield lied when he testified that he did not have sexual contact with his stepsister and when he testified that Cresalia had arranged a meeting with him prior to his arrest. Both of these findings are supported by the evidence adduced at trial, and neither finding is clearly erroneous. *See United States v. Lewis*, 436 F.3d 939, 945 (8th Cir. 2006) (where there are two permissible views of the evidence, a district court's finding that the defendant gave perjurious testimony is not clearly erroneous), *pet. for cert. filed*, No. 05-11582 (U.S. June 13, 2006).

Thundershield next argues that his false testimony was not material. Thundershield is incorrect. The district court supported its perjury finding by specifically identifying testimony in which Thundershield denied committing the offense and claimed that his inculpatory statements to Cresalia were lies. *See* Thundershield Tr. 35, 50, 61, 62. "'Material' evidence, fact, statement, or information . . . means evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, comment. (n.6). The testimony cited by the district court — testimony in which Thundershield described the events of the night in question and denied raping his stepsister — was about as material as testimony could be. *See O'Dell*, 204 F.3d at 837.

Thundershield finally claims that the district court failed to apply an "objective standard" under which no enhancement may be imposed if a reasonable factfinder could have believed him. Thundershield relies primarily on *United States v. Iversen*,

90 F.3d 1340 (8th Cir. 1996), and *United States v. Cabbell*, 35 F.3d 1255 (8th Cir. 1994). Both of those cases, however, were decided under an earlier version of § 3C1.1, which contained the following commentary: "'In applying this provision in respect to alleged false testimony or statements by the defendant, such testimony or statements should be evaluated in a light most favorable to the defendant.'" *Cabbell*, 35 F.3d at 1261 (quoting then-current U.S.S.G. § 3C1.1, comment. (n.1)). Both *Cabbell* and *Iversen* explicitly relied on the "most favorable" language in explaining that an enhancement is improper if a reasonable trier of fact could have believed the defendant's testimony. *Cabbell*, 35 F.3d at 1261; *Iversen*, 90 F.3d at 1342; *see also United States v. Willis*, 940 F.2d 1136, 1140 (8th Cir. 1991) (citing the "most favorable" language). Other circuits similarly relied on the "most favorable" language. *See, e.g.*, *United States v. Montague*, 40 F.3d 1251, 1254 (D.C. Cir. 1994); *United States v. Onumonu*, 999 F.2d 43, 45 (2d Cir. 1993).

A 1997 amendment to § 3C1.1 removed this "most favorable" language and substituted the following: "[T]he court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." *Compare* U.S.S.G. § 3C1.1, comment. (n.1) (1995) *with* U.S.S.G. § 3C1.1, comment. (n.2) (2005); *see also United States v. Simms*, 285 F.3d 1098, 1101-02 (8th Cir. 2002) (describing change); *United States v. Greer*, 285 F.3d 158, 182-83 (2d Cir. 2002) (reversing and remanding because the district court erroneously applied the outdated "most favorable" standard). Cases decided under the post-1997 version of § 3C1.1 apply a preponderance-of-the-evidence standard, under which a district court's choice between two permissible views of the evidence cannot be considered clearly erroneous. *See, e.g.*, *Lewis*, 436 F.3d at 945. We therefore reject Thundershield's argument that the district court applied an incorrect standard, and we affirm the two-level enhancement for obstruction of justice.

## B. Reasonableness of Sentence

Thundershield next contends that his terms of imprisonment and supervised release are unreasonable under § 3553(a). Under § 3553(a), district courts must consider a number of relevant factors in imposing a sentence, including, among others:

> (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)    the need for the sentence imposed —
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a) (2006). A sentence may be unreasonable if the district court fails to consider a relevant factor that should have received significant weight; gives significant weight to an improper or irrelevant factor; or considers the appropriate factors but commits a clear error of judgment. *See Beal*, 463 F.3d at 836.

Thundershield argues that this Court cannot conduct a meaningful reasonableness review because the district court failed to make a proper record or to consider the relevant § 3553(a) factors. A review of the sentencing transcript reveals that Thundershield's assertions are without merit. The district court first properly

determined the applicable Guidelines range.  Sentencing Tr. 7.  The district court then considered Thundershield's motion for a downward departure and explained its reasons for denying the motion.  Sentencing Tr. 16-17.  Finally, the district court considered numerous facts relevant under § 3553(a), including Thundershield's lack of prior criminal history, his obstructive conduct, his lack of remorse, the fact that he took advantage of his victim's incapacitated state, and the fact that his victim trusted and loved him as a brother.  Sentencing Tr. 18.  After considering these factors, the district court imposed a sentence of incarceration at the bottom of the Guidelines range and a supervised-release term of 10 years.[8]

District courts are not required to conduct an explicit on-the-record discussion of every § 3553(a) factor.  *Lewis*, 436 F.3d at 946.  Because Thundershield's term of imprisonment was within the Guidelines range, it is presumed reasonable.  *United States v. Lincoln*, 413 F.3d 716, 717 (8th Cir. 2005), *cert. denied*, 126 S. Ct. 840 (2005).  This presumption can be rebutted only under "highly unusual circumstances." *United States v. Lazenby*, 439 F.3d 928, 933 (8th Cir. 2006).  Thundershield does not identify any significant factor, much less any "highly unusual circumstance," to which the district court failed to give proper consideration.  His most specific contention is that his term of supervised release is unreasonably long because sex offenders are at

---

[8]The probation office calculated the sentencing range for Thundershield's term of supervised release to be two years to life, citing U.S.S.G. § 5D1.2(b)(2) (2005). PSR ¶ 42.  But because Loefer was not a minor at the time of the offense, it appears that § 5D1.2(b)(2) is not applicable in this case.  *See* U.S.S.G. § 5D1.2, comment. (n.1) (defining "sex offense" as "an offense, perpetrated against a minor . . ."). Thundershield did not raise this issue on appeal, however, and it is therefore waived. *See XO Mo., Inc. v. City of Md. Heights*, 362 F.3d 1023, 1025 (8th Cir. 2004).  While we have discretion to consider issues not raised in the briefs, *see Hatley v. Lockhart*, 990 F.2d 1070, 1073 (8th Cir. 1993), we decline to do so here, where the district court properly treated the Guidelines as advisory, and where Thundershield's 10-year term of supervised release is well within the statutory limit of life.  *See* 18 U.S.C.A. § 3583(k) (2005).

no greater risk of recidivism than other offenders. But Thundershield's complaint is with Congress, not with the district court. Congress deliberately chose to impose longer terms of supervised release on persons convicted of certain sex offenses, including the offense of which Thundershield was convicted. *See* 18 U.S.C.A. § 3583(k) (2005). It is not for this Court to second-guess Congress's policy choices.

As noted, the district court explicitly weighed a number of mitigating and aggravating circumstances that were relevant under § 3553(a) in determining Thundershield's sentence. We find that Thundershield's sentence is reasonable in light of those facts. Indeed, even if Thundershield's within-Guidelines sentence were not presumed to be reasonable under our precedents — that is, even if we were to review Thundershield's sentence de novo — we would still find that the district court acted reasonably in imposing a sentence of 151 months in prison and 10 years of supervised release.

AFFIRMED.

_____